J. E04005-14

2015 PA Super 137

FAYE M. MORANKO, ADMIN. OF THE
ESTATE OF RICHARD L. MORANKO,
DECEASED

Appellant

v.

DOWNS RACING LP, D/B/A MOHEGAN
SUN AT POCONO DOWNS

Appellee

IN THE SUPERIOR COURT OF

PENNSYLVANIA

No. 192 MDA 2013

Appeal from the Order January 4, 2013
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 2011-CV-10312

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., PANELLA, J., DONOHUE, J., SHOGAN, J., MUNDY, J., OLSON, J., OTT, J.

OPINION BY PANELLA, J.                    **FILED JUNE 10, 2015**

Appellant, Faye M. Moranko, Administratrix of the Estate of Richard L. Moranko, deceased, appeals from the order entered January 4, 2013, by the Honorable William H. Amesbury, Court of Common Pleas of Luzerne County, which entered summary judgment in favor of Appellee, Downs Racing LP, d/b/a Mohegan Sun at Pocono Downs ("Mohegan Sun"). This case raises an issue of first impression in this Commonwealth regarding the duty and ultimate liability of a valet service when an automobile is returned to an

allegedly intoxicated patron. We find no such duty exists under Pennsylvania law. Accordingly, we affirm the entry of summary judgment.

Moranko instituted this wrongful death and survival action by way of Complaint filed August 9, 2011. Moranko alleges that on January 15, 2011, her son, Richard Moranko (the "decedent"), consumed "copious amounts of alcohol" while at Mohegan Sun. Complaint, 8/9/11 at ¶ 7. Thereafter, at approximately 8:30 p.m., the decedent retrieved his vehicle from valet services, despite his alleged visible intoxication. *See id.*, at ¶¶ 8-9. After the decedent departed Mohegan Sun, he was involved in an automobile accident resulting in his death. *See id.*, at ¶¶ 12-16. Moranko argues in her Complaint that Mohegan Sun was negligent in serving the decedent alcoholic beverages and in handing over the keys to his vehicle when he was allegedly visibly intoxicated.

On July 30, 2012, following the completion of discovery, Mohegan Sun filed a motion for summary judgment. Mohegan Sun argued, among other things, that Moranko had failed to produce sufficient evidence that it served the decedent alcoholic beverages while he was visibly intoxicated and that there is no cause of action in Pennsylvania allowing recovery against a valet service for giving a visibly intoxicated customer the keys to his vehicle. The trial court granted the motion and entered summary judgment in favor of Mohegan Sun. Moranko appealed. A panel of this Court issued an opinion affirming the grant of summary judgment. *See Moranko v. Downs Racing LP*, 192 MDA 2013 (Pa. Super., filed 6/24/14) (withdrawn). Judge

Mundy filed a dissenting opinion. Moranko sought reargument, which this Court granted. After the filing of supplemental briefs, this matter is ready for disposition.

Moranko argues that "the trial court erred in granting [Mohegan Sun's] motion for summary judgment when there exists genuine issues of material fact and [Mohegan Sun] was not entitled to judgment as a matter of law." Appellant's Brief, at 3. We review a challenge to the entry of summary judgment as follows.

> [We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P., Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*E.R. Linde Const. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa. Super. 2013) (citation omitted).

Herein, although Moranko devotes much of her brief to arguing the evidence supports a finding that the decedent was visibly intoxicated while

at Mohegan Sun, we again note that our standard when reviewing a trial court's entry of summary judgment requires that we resolve all doubts as to the existence of a genuine issue of material fact in her favor. **See id**. Therefore, for the purposes of our analysis, we will accept Moranko's contention and analyze the issues with the understanding that the decedent was visibly intoxicated. The crux of this case then hinges upon whether Pennsylvania law imposes a duty upon Mohegan Sun and its valet service to withhold the keys to a vehicle if the owner appears visibly intoxicated. We find that it does not.

It is axiomatic that the elements of a negligence-based cause of action are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss. **See Wright v. Eastman**, 63 A.3d 281, 284 (Pa. Super. 2013). The question of whether a duty exists, as part of a negligence claim, is a question of law, assigned in the first instance to the trial court and subject to plenary appellate review. **See Thierfelder v. Wolfert**, 52 A.3d 1251, 1264 (Pa. 2012).

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the [over all] public interest in the proposed solution.

**Montagazzi v. Crisci**, 994 A.2d 626, 631 (Pa. Super. 2010) (citations omitted).

"When considering the question of duty, it is necessary to determine whether a defendant is under any obligation for the benefit of the particular plaintiff ... and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." **Roche v. Ugly Duckling Car Sales, Inc.**, 879 A.2d 785, 789 (Pa. Super. 2005) (citation and internal quotation marks omitted).

At the outset, we note that Moranko makes no citation to the record, and we have found no evidence of record, to support her claim that Mohegan Sun served alcohol to the decedent while he was at the casino prior to the tragic accident. Moranko presents no testimony, video surveillance, or other evidence establishing that Mohegan Sun served the decedent alcohol on the casino premises.

To support her claim against the parking service, Moranko does not cite case law from any jurisdiction that imposes an affirmative duty upon the valet employed by Mohegan Sun. Rather, she relies upon general concepts of "ordinary care" and public policy to create such a duty. More specifically, Moranko relies upon Section 324A of the Restatement (Second) of Torts, Liability to Third Person for Negligent Performance of Undertaking, to support the imposition of a duty in this matter.[1] Section 324A provides as follows:

---

[1] Moranko additionally cites Section 390 of the Restatement (Second) of Torts, Chattel for Use by Person Known to be Incompetent, in support of her argument. However, it appears from our review of the record that Moranko failed to raise Section 390 of the Restatement as a basis for relief in the trial court at any point in the proceedings. It is well-settled that issues raised for

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability *to the third person* for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965) (emphasis added).

The comments to Section 324A of the Restatement makes clear that "[t]his section deals with the liability to third persons." *Id*., Comment a. Here, Moranko's claims do not invoke third party liability, but rather concern an alleged failure to act resulting in direct harm to the decedent. Therefore, we do not find that Section 324A of the Restatement provides Moranko with a basis for relief.

Moranko alternatively argues that Mohegan Sun's duty is manifest in its failure to comply with internal organizational policies "designed to identify visibly intoxicated patrons and to prevent them [sic] *from the gaming floor*."

---

the first time on appeal are waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Even if we were to ignore waiver, however, we would find this issue to be without merit. As discussed in detail below, because we find that Mohegan Sun, as bailee, was duty bound to return the decedent's vehicle despite his alleged intoxication, the negligent entrustment theory of tort liability does not apply to this case.

Appellant's Brief, at 16 (emphasis added). This internal policy of Mohegan Sun is aimed not at preventing their valets from withholding an automobile from a visibly intoxicated patron, but from keeping visibly intoxicated patrons from gambling on the casino gaming floor. As such, it cannot serve to place a legal duty on Mohegan Sun.

We further find Moranko's reliance on 58 Pa.Code § 501a.3(a) to be misplaced. That section provides, in pertinent part:

**§ 501a.3. Employee training program.**

(a) The employee training program required under § 501a.2(d)(5) (relating to compulsive and problem gaming plan) must include instruction in the following:

(1) Characteristics and symptoms of compulsive behavior, including compulsive and problem gambling.

. . .

(6) Procedures designed to prevent serving alcohol to visibly intoxicated gaming patrons.

(7) Procedures designed to prevent persons from gaming after having been determined to be visibly intoxicated.

. . .

58 Pa.Code § 501a.3(a). To the extent this section mandates implementation of employee training procedures to prohibit serving alcohol to visibly intoxicated gaming patrons, this internal policy of Mohegan Sun is not aimed at requiring valets to withhold an automobile.[2]

---

[2] Significantly, Moranko's focus on policies prohibiting the service of alcohol to intoxicated patrons ignores a fatal defect to her argument—nowhere does

Moranko next argues that Section 323 of the Restatement (Second) Torts is applicable. Moranko did not raise this in her response to the motion for summary judgment, in her brief in support thereof, nor did she even raise this claim in the appellate brief originally filed in this appeal. Moranko raises this argument for the *first* time on appeal in her supplemental brief submitted on reargument. We find it waived. **See generally** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

As noted, Moranko did not raise Section 323 in her response to Mohegan Sun's motion for summary judgment. "[A]rguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal." **Krentz v. Consolidated Rail Corp.**, 910 A.2d 20, 37 (Pa. 2006) (citing **McHugh v. Proctor & Gamble**, 875 A.2d 1148, 1151 (Pa. Super. 2005); **Devine v. Hutt**, 863 A.2d 1160, 1169 (Pa. Super. 2004)). This canon of appellate practice comports with "our Supreme Court's efforts to promote finality, and effectuates the clear mandate of our appellate rules requiring presentation of all grounds for relief to the trial court as a predicate for appellate review." **Hutt**, 863 A.2d at 1169. **See also Keystone Bldg. Corp. v. Lincoln Sav. & Loan Ass'n**, 360 A.2d 191, 194 (Pa. 1976) (deeming contention waived due to appellant's failure to raise it before appealing to this Court); **Commonwealth v.**

---

Moranko cite to any evidence that Mohegan Sun served alcohol to the decedent while at the casino prior to the tragic accident.

*Dennis*, 695 A.2d 409, 411 (Pa. 1997) (stating that "trial courts should be given the opportunity to correct an error and conserve judicial resources.").

Accordingly, we find Moranko's argument based on Section 323 of the Restatement (Second) Torts waived.

Mohegan Sun directs this Court to the Pennsylvania Supreme Court's decision in *Congini v. Portersville Valve Company*, 470 A.2d 515, 519 (Pa. 1983), in which the Court determined that a social host who had no right of control over or ownership of an intoxicated guest's vehicle could not be held liable for negligent entrustment. The Court cited with approval the Supreme Court of Nevada's decision in *Mills v. Continental Parking Corp.*, 86 Nev. 724, 475 P.2d 673 (1970), which held that a parking lot attendant could not be liable for surrendering a vehicle to its intoxicated owner.

In *Mills*, the Nevada Supreme Court affirmed dismissal of the plaintiff's claim for wrongful death brought by the heirs of a pedestrian who was killed by a car driven by a drunk driver against the operator of a parking lot who surrendered the vehicle with knowledge of the driver's inebriation. *See id*., at 724, 475 P.2d at 674. Finding that a legal relationship of bailor-bailee is created where the parking lot attendant "collects a fee, has possession of the keys, assumes control of the car and issues a ticket to identify the car for redelivery," the Court reasoned that

> [t]he negligent entrustment theory of tort liability does not apply to the normal bailor-bailee relationship since the bailee is duty bound to surrender control of the car to the bailor upon demand or suffer a possible penalty for conversion. Indeed, if the bailee refuses to return the car at the end of the bailment it is

presumed that the car was converted to him. Here, the bailment ended when [the intoxicated individual] appeared at the parking lot to reclaim possession of his car and paid for the parking services. At that moment the bailee lost right to control the car. Although the negligent entrustment theory may apply where one who has the right to control the car permits another to use it in circumstances where he knows or should know that such use may create an unreasonable risk of harm to others, it does not apply when the right to control is absent.

*Id*., at 725-726, 475 P.2d at 674.

Under Pennsylvania law, a mutual bailment is created where a valet service accepts possession of a patron's keys and parks the vehicle as a service to those gambling on the casino premises. ***See***, ***e.g.***, ***Taylor v. Philadelphia Parking Authority***, 156 A.2d 525, 527 (Pa. 1959) (holding that when attendants collect fees, assume control of cars, park them and issue tickets as means of identifying cars upon redelivery, a bailment is created); ***Baione v. Heavey***, 158 A. 181, 182 (Pa. Super. 1932) (holding relationship between a parking lot owner and an automobile owner parking a car therein was that of bailor and bailee). Therefore, we must examine what legal duty, if any, Pennsylvania has imposed upon bailees in their dealings with bailors.

Although no Pennsylvania appellate decision addresses the specific issue of parking attendant/valet liability, a number of other jurisdictions have reached the same conclusion as in ***Mills***. ***See Umble v. Sandy McKie and Sons, Inc.***, 294 Ill.App.3d 449, 451-52, 690 N.E.2d 157, 158-157 (1998) (holding vehicle repair shop was bailee for hire, and once intoxicated vehicle owner paid for repairs and demanded return of his keys, shop had no

discretion to refuse); ***Knighten v. Sam's Parking Valet***, 206 Cal.App.3d 69, 75, 253 Cal.Rptr. 365, 367 (1988) (holding valet parking service had no duty to withhold automobiles from an intoxicated patron).

We find the reasoning in ***Mills*** applicable to this case. The Mohegan Sun valet service, as bailee, was duty bound to surrender control of the decedent's vehicle when it was demanded, notwithstanding the decedent's alleged intoxication. When the decedent requested the return of his vehicle, Mohegan Sun as bailee lost the right to control the car. As Mohegan Sun had no right of control, we cannot find it liable for decedent's actions when the car was returned to his possession. In so finding, we find instructive the Nevada Supreme Court's comment in ***Mills***: "The imposition of civil liability in the circumstances here alleged would lead to unforeseeable consequences limited only by the scope of one's imagination. We decline to venture into that wonderland." 86 Nev. at 726, 475 P.2d at 674.

While we sympathize greatly with Moranko's loss, we cannot find that, as a matter of law, Mohegan Sun had the power, let alone the duty, to withhold the decedent's keys. As such, we find the trial court properly entered summary judgment in Mohegan Sun's favor.[3]

---

[3] Moranko additionally raises the issue of Mohegan Sun's "Dram Shop liability" on appeal. Appellant's Brief, at 20-21. However, Moranko fails to provide a single legal citation in support of this argument, or to otherwise develop this issue in any meaningful way. "It [is] well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal." ***Jones v. Jones***, 878 A.2d 86, 90 (Pa. Super. 2005). Accordingly, we are constrained to find that Moranko has abandoned this claim on appeal.

Order affirmed. Jurisdiction relinquished.

President Judge Gantman, President Judge Emeritus Ford Elliott, and Judges Shogan, Olson, and Ott join the opinion.

Judge Mundy files a dissenting opinion in which President Judge Emeritus Bender and Judge Donohue join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2015