J-A21040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SILVIA SANTO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHAD BATTERMAN | : | |
| | : | |
| Appellant | : | No. 2720 EDA 2023 |

Appeal from the Order Entered September 29, 2023
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  PACSES: 267116855

BEFORE:  KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM PER CURIAM:                           **FILED JANUARY 15, 2025**

Chad Batterman ("Batterman") appeals pro se from the order entered by the Philadelphia County Court of Common Pleas ("trial court") finding him in contempt for violating a support order, sentencing him to thirty days' incarceration, and imposing a purge factor of $5,000.  After careful review, we affirm.

Batterman and Silvia Santo ("Santo") were married in November 2014, separated in November 2017, and divorced in August 2023.  The parties had two children during the marriage.  In December 2017, Santo filed a complaint for child support against Batterman.  On June 22, 2018, the trial court entered a final child support order calculating Batterman's monthly obligation for the two children to be $686.00 per month.

On October 1, 2018, Batterman filed a petition to modify the support order. Following protracted proceedings, the trial court entered an order on February 20, 2020, directing Batterman to pay $674.48 per month in child support. This Court affirmed that order. *See Santo-Batterman v. Batterman*, 1258 EDA 2020 (Pa. Super. Aug. 23, 2021) (non-precedential decision).

In the interim, on January 17, 2020, Santo filed a petition for contempt of the initial child support order.[1] As a result of the Covid-19 pandemic, the hearing on the petition was delayed until April 1, 2022. At that hearing, Batterman did not appear and the trial court issued a bench warrant. Batterman surrendered three days later, but the trial court did not resolve the contempt petition and instead scheduled a hearing. At the next scheduled hearing on September 1, 2022, Batterman again failed to appear, and the trial court issued another bench warrant. Batterman returned to the courthouse on September 9, 2022, but the trial court did not decide the petition at that time. The trial court scheduled a hearing on the contempt petition for October 31, 2022. Once again, Batterman failed to appear at that hearing, prompting the trial court to issue another bench warrant. Batterman came to the courthouse the following day, but left before there was any resolution to the

_____

[1] Santo argued that Batterman violated a April 19, 2019 support order in her contempt petition. However, a review of the record indicates that Batterman had filed a modification petition on that date. At the time of the filing of the contempt petition, the June 22, 2018 support order was still in effect.

contempt petition. As a result, the trial court issued a bench warrant, which was subsequently reissued on November 3, 2022.[2] On November 15, 2022, while still a fugitive, Batterman filed three petitions: a petition to assign the support case as complex, a petition to reinstate his driver's license, and a petition to suspend/modify his child support.

Ultimately, Batterman surrendered in September 2023, and the trial court held hearings on the contempt petition on September 25 and 29, 2023. Batterman testified that he was unable to make payments because he had medical problems that inhibited his ability to work. Further, Batterman's mother testified that she pays Batterman's bills and for his vacations, but not his child support. At the conclusion of the hearing, the trial court found Batterman in civil contempt of the child support order. The trial court sentenced Batterman to thirty days in prison with a purge factor of $5,000. Batterman immediately paid the purge factor, and was released from prison. Batterman filed a timely appeal, raising numerous claims for our review.

## Finding Batterman in Contempt

First, Batterman contends that the trial court abused its discretion in finding him in contempt. Batterman's Brief at 2, 37, 39. Batterman claims he could not comply with the support order because he was unable to work or earn an income and has no assets. *Id.* at 9, 19; *see also id.* at 9-10 (noting

---

[2] Batterman also did not appear at the November 8, 2022 hearing on his petition to suspend/modify child support and alimony pendente lite.

the trial court failed to review the support order). He asserts that he has been unable to work since January 2019 because of medical issues. *Id.* at 3-4, 8, 11, 13-14, 15, 23-24; *see also id.* at 17-18 (stating that Batterman's mother corroborated his medical issues). Batterman claims the trial court ignored the recent undisputed evidence from June 2023 indicating that a doctor ordered him not to work. *Id.* at 15; *see also id.* at 15-16 (noting that the trial court improperly demanded an order stating Batterman could not work, but could travel, arguing that the trial court has no legal authority to dictate what a doctor should order after examining a patient); *id.* at 23, 25-26 (arguing that the trial court finding that 98% of Batterman's medical records were redacted is not supported by the record, and noting only one doctor's order has redactions).

Despite being unable to work, he observes that the trial court assigned him an earning capacity of $26,000 per year. *Id.* at 2-3. Batterman asserts that he needs to pay child and spousal support, the children's health insurance, and fund his own needs from his earnings. *Id.* at 3, 18, 19. He points out that multiple courts have granted him in forma pauperis status based on his own inability to pay fees, which he contends establishes his indigency. *Id.* at 31, 33-34. Batterman further claims that Santo refuses to work full-time and does not provide support or pay for extracurricular activities for the children. *Id.* at 36.

He additionally contends that his parents' money is not relevant in determining his ability to pay, and the trial court's reliance on his parents' wealth is not supported by the record and prejudices him. ***See id.*** at 4-5, 19, 31, 38. Batterman acknowledges that his parents pay his purge factors to keep him out of prison, but asserts that they will not pay support because they are financially drained. ***Id.*** at 27-30, 32, 33 n.22. Batterman further argues that although he lives in a home owned by his parents and his parents loan him the money to pay for rent, utilities, and other costs, his parents do not pay for all his expenses. ***Id.*** at 5, 26-27, 29-30, 31-32, 38-39. Batterman argues that his parents are free to spend their money how they wish. ***Id.*** at 22. According to Batterman, and contrary to what he believes to be the trial court's finding, the definition of income under the Domestic Relations Code does not include his parents paying his reasonable living costs. ***Id.*** at 5-6, 20.

We will reverse an order granting a civil contempt petition only if the trial court misapplied the law or exercised its discretion in a manner that lacked reason. ***MacDougall v. MacDougall***, 49 A.3d 890, 892 (Pa. Super. 2012). "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute." ***Habjan v. Habjan***, 73 A.3d 630, 637 (Pa. Super. 2013) (citation omitted); ***see also*** Pa.R.Civ.P. 1910.25. "The purpose of civil contempt is to compel

performance of lawful orders, and in some instances, to compensate the complainant for the loss sustained. When contempt is civil, a court must impose conditions on the sentence so as to permit the contemnor to purge himself." **Gunther v. Bolus,** 853 A.2d 1014, 1018 (Pa. Super. 2004) (citations and quotation marks omitted).

The general rule in proceedings for civil contempt is that "the burden of proof rests with the complaining party to demonstrate, by a preponderance of the evidence, that the defendant is in noncompliance with a court order." **Habjan**, 73 A.3d at 637 (citation omitted).

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

**Id.** (citation omitted). "The alleged contemnor may then present evidence that he has the present inability to comply and make up the arrears." **Hyle v. Hyle**, 868 A.2d 601, 604 (Pa. Super. 2005).

Here, the record establishes that the trial court entered a child support order, Batterman had notice of the order (indeed, he filed a modification petition), and failed to make the required monthly payments. To that end, Batterman had accumulated arrearages of over $32,000, and the last child support payment was received in March 2021. N.T., 9/25/2023, at 9-10. Accordingly, Batterman has failed to comply with the support order, which generally is sufficient to establish his willful violation. **See** Trial Court Opinion,

1/31/2024, at 4 (finding that "Batterman's actions in failing to comply with his order of support are willful"); *see also Godfrey v. Godfrey*, 894 A.2d 776, 783 (Pa. Super. 2006) (concluding that the evidence of record supported the trial court's finding that the father willfully violated the child support order where father never complied with the support order and had accumulated substantial arrearages).

Batterman argues, however, that his noncompliance is not willful, but that his nonpayment is because he is unable to meet his child support obligations and therefore cannot be found in contempt. *See Hyle*, 868 A.2d at 604. To that end, Batterman seeks to relitigate the calculation of his earning capacity based upon his inability to work for a period of over four years. In so arguing, he relies on various doctors' reports detailing this inability. We note, however, that Batterman presented this evidence to the trial court, which found it to be unpersuasive and incredible. *See* Trial Court Opinion, 1/31/2024, at 4. We must defer to the trial court's credibility determinations and conclude that Batterman's claim that he was unable to work is not supported by the record. *See Habjan*, 73 A.3d at 644.

Additionally, Batterman takes issue with the trial court's reliance on his parents' financial support in the form of living expenses, payment for vacations, and payment of prior purge factors each time he has been found in contempt. Batterman argues the trial court erred in finding his parents' financial aid was properly calculated as part of his income.

"The starting point for calculation of a parent's child support obligation is a determination of each party's income available for support." ***Mencer v. Ruch***, 928 A.2d 294, 297 (Pa. Super. 2007). "The assessment of the full measure of a parent's income for the purposes of child support requires courts to determine ability to pay from all financial resources" and "the court must consider all forms of income." ***Id.*** (citation and quotation marks omitted).

For purposes of child support, "income" is defined as follows:

**"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. § 4302. Notably, "[w]hile this definition is expansive, it includes neither gifts nor loans." ***Suzanne D. v. Stephen W.***, 65 A.3d 965, 970 (Pa. Super. 2013); ***see also id.*** ("Because a gift is given not in exchange for services, it does not meet the statutory definition of income.").

We conclude that Batterman is correct that the funds he receives from his parents cannot be counted as "income." The record reflects that Batterman's parents' financial assistance includes the cost of his monthly rent

($3,000), his utilities and other living expenses, children's health insurance and extracurricular activities, and $15,000 for a custody evaluation in Montgomery County. *See* N.T., 9/29/2023, at 17-18, 19, 48-49, 51, 53-54, 56-57, 58, 60-61; N.T., 9/25/2023, at 13, 14-15, 16-17, 59, 62-64, 66, 71. Such payments are properly classified as a gift or a loan. *See Suzanne D.*, 65 A.3d at 971, 973 (finding that paternal grandfather's payment of private school tuition, children's medical expenses, and extracurricular activities were gifts). As such, the money provided to Batterman cannot be considered "income" for child support purposes. *See id.* at 972 ("Monetary gifts from family members are a common practice, and would not have been unknown to the drafters of the statute. Had the General Assembly wished to include gifts as income for support, it would have done so."). Therefore, the trial court erred in finding these gifts by Batterman's parents constitute "income" under 23 Pa.C.S. § 4302.

Nevertheless, gifts may be included in determining whether a party can pay child support. *See Mencer*, 928 A.2d at 297 (noting in determining the amount of child support, courts may consider all the parent's financial resources); *see also Suzanne D.*, 65 A.3d at 973 (noting that gifts, which are likely to continue, can be considered in supporting an upward deviation for child support). Batterman does not dispute the trial court's finding that he receives support and resources from his parents, yet he "is not using any of it to pay his support obligations to Santo." Trial Court Opinion, 1/31/2024, 4.

"[A] parent's duty to support his minor children is absolute, and the purpose of child support is to promote the children's best interests. The court has no legal authority to eliminate an obligor's support obligation, where the obligor can reasonably provide for some of the children's needs." **Silver v. Pinskey**, 981 A.2d 284, 296 (Pa. Super. 2009) (citation omitted). "The support of a spouse or child is a priority obligation so that a party is expected to meet this obligation by adjusting the party's other expenditures." Pa.R.Civ.P. 1910.16-1(a)(4).

Here, the record supports the trial court's finding that Batterman had the ability to pay child support in accordance with its order but willfully failed to do so. We therefore conclude that the trial court did not abuse its discretion in finding Batterman to be in contempt of the child support order.[3]

### Parents' Finances

In his second claim, Batterman argues that the trial court erred in concluding his parents are his private bank account and should pay his child support obligations. Batterman's Brief at 39. Batterman contends that the trial court only focused on his parents' wealth instead of his own earning capacity and inability to pay court fees. *Id.* at 40. Batterman asserts that the judge improperly focused on the size of the house and property where he lives, the value of the house, and the payments made by his parents for

---

[3] **See Bank of Am., N.A. v. Scott**, 271 A.3d 897, 908 (Pa. Super. 2022) (stating that this Court may affirm on any legal basis supported by the record).

utilities, health insurance, and other items. ***Id.*** Batterman believes the trial court judge is "infatuated and enamored" with his parents. ***Id.*** Batterman further notes that he qualified for supplemental nutrition assistance program benefits in September 2023, evidencing he can live on a large property and still qualify for state assistance. ***Id.*** at 40-41.

We view this claim as another argument in support of finding his inability to pay. As we have already determined, the trial court did not abuse its discretion in utilizing the gifts and loans provided by Batterman's parents to conclude that he can afford the child support obligation ordered. ***See supra***, pp. 8-9. Therefore, we do not find merit in Batterman's claim.

## Trial Court as Advocate

In his third claim, Batterman contends that the trial court judge did not act as a neutral arbiter and instead acted as an advocate for Santo. Batterman's Brief at 41-42. Batterman contends that the judge excessively questioned him and his mother even though Santo had counsel. ***Id.*** at 42. According to Batterman, the judge did not act impartially at the hearing. ***Id.*** at 41, 42.

Our review of the record reveals that Batterman did not raise this claim before the trial court. Notably, Batterman does not cite to any place in the record where he objected to the trial judge's questions, and instead, asks this Court to "review the September 25, 2023 and September 29, 2023 transcripts" to establish that the trial judge was not a neutral arbiter. ***Id.*** at

41; *see also* Pa.R.A.P. 2119(c) ("If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appear."). Therefore, the claim is waived on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").[4]

### Failure to Allow Batterman's Exhibits and Testimony

In his fourth claim, Batterman contends that the trial court erred in refusing to allow him to submit exhibits and testify. Batterman's Brief at 42. In support of his contention, Batterman only states "[s]ee error number 1 and error number 3," and "note[s] for this Court that the [t]rial [c]ourt failed to reply to this error in its Opinion." *Id.*

Batterman's incorporation by reference to other portions of his brief is insufficient to allow this Court to review the separate claim raised. *See* Pa.R.A.P. 2119(a) (stating argument must contain analysis and citation to pertinent analysis); *Franciscus v. Sevdik*, 135 A.3d 1092, 1097 (Pa. Super. 2016) (noting courts do not permit parties to incorporate by reference arguments "as a substitute for the proper presentation of arguments in the

---

[4] In any event, we note that pursuant to Pennsylvania Rule of Evidence 614(b), "the court may examine a witness regardless of who calls the witness." Pa.R.E. 614(b). Notably, Batterman does not point to any specific questions where the trial court acted improperly.

body of the appellate brief") (citation omitted). Therefore, Batterman waived this claim for appellate review. *See Moranko v. Downs Racing LP*, 118 A.3d 1111, 1117 n.3 (Pa. Super. 2015) (en banc) ("It [is] well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal.").

### Attorney-Client Privilege

In his fifth claim, Batterman argues that the trial court judge erred in ordering him "to break attorney[-]client privilege and to go against his attorney's advice and direction." Batterman's Brief at 42. He contends that he is involved in a lawsuit and his counsel in that case advised him against disclosing any information related to that case in the instant matter. *Id.* at 42-43. Batterman asserts that he invoked this privilege at the hearing. *Id.* at 43.

The applicability of the attorney-client privilege is a question of law for which "our standard of review is de novo and our scope of review is plenary." *Ford-Bey v. Pro. Anesthesia Servs. of N. Am., LLC*, 229 A.3d 984, 990 (Pa. Super. 2020) (citation omitted).

"[T]he attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011).

> Pennsylvania law imposes a shifting burden of proof in disputes over disclosure of communications allegedly protected by

attorney-client privilege. The party invoking a privilege must initially set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege, e.g., because the privilege has been waived or because some exception applies. Accordingly, if the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege.

Four elements must be satisfied in order to invoke successfully the protections of attorney-client privilege:

1) The asserted holder of the privilege is or sought to become a client.

2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

***Newsuan v. Republic Servs. Inc.***, 213 A.3d 279, 284-85 (Pa. Super. 2019) (citations, brackets, and quotations marks omitted).

The record reflects that during the hearing, Santo's counsel asked Batterman whether he had settled a personal injury lawsuit on "August 10th." N.T. 9/29/2023, at 20. Batterman indicated he had been advised by his counsel in that case not to discuss the case until it had been resolved and that it was privileged information under the attorney-client privilege. *Id.* at 20-21. The trial court responded "give us the information on this lawsuit, sir.

- 14 -

Stop telling me vague information. … Sir, I'm ordering you to give me the information." ***Id.*** at 21. Batterman then stated to his knowledge, the lawsuit had not been settled. ***Id.*** Santo's counsel then asked if it was a personal injury claim, to which Batterman said "[y]es," and further acknowledged the suit was filed in Philadelphia County Court of Common Pleas. ***Id.*** at 22-23.

Batterman has not produced sufficient facts to establish that the privilege was properly invoked or that any of the above statements were communicated or intended to be communicated with his attorney for the purpose of obtaining or providing legal advice. Indeed, Batterman merely made general statements about a personal injury lawsuit in Philadelphia County; he provided no specific information, such as the injuries sustained or settlement discussions that may (or may not) have occurred. Batterman cites no authority supporting his contention that general statements about the existence of an ongoing suit are protected from disclosure under the attorney-client privilege. ***See*** Pa.R.A.P. 2119(a). We therefore conclude that Batterman fails to establish error.

### Purge Amount

In his sixth claim, Batterman argues that the "judge erred as a matter of law by setting a purge amount of $5,000." Batterman's Brief at 43. In support of his claim, Batterman only states "[s]ee error number 1." ***Id.***

Again, Batterman's incorporation by reference to other portions of his brief is insufficient to allow this Court to review the separate claim raised. ***See***

Pa.R.A.P. 2119(a); **Franciscus**, 135 A.3d at 1097. Therefore, Batterman waived this claim for appellate review. **See Moranko**, 118 A.3d at 1117 n.3.

### Prohibiting Batterman from Speaking with Counsel

In his seventh claim, Batterman contends that the trial court judge continually violated his Sixth Amendment rights by prohibiting from speaking with counsel during the hearing. **Id.** at 43-44. In support of this claim, he states only that the trial court judge "would make interruptions throughout the hearings if his Honor believed [Batterman] was speaking to his attorney and yell at [Batterman] to stop and in some instances[, the trial court judge] bullied [Batterman] to tell [him] he was correct despite his Honor being wrong." **Id.** at 44 n.32 (citing N.T., 9/29/2023, at 84, 87, 88). He does not cite any place in the record where the trial court prohibited him from speaking with his attorney, or that he raised this contention before the trial court. **See** Pa.R.A.P. 2119(c). Therefore, the claim is waived on appeal. **See** Pa.R.A.P. 302(a).

### Continuance

In his final claim, Batterman contends that the trial court erred in denying his continuance request for the October 31, 2022 hearing and issuing a bench warrant. Batterman's Brief at 44-45. He argues that the trial court ignored that he had tested positive for Covid-19 on that date and should have granted the continuance on that basis. **Id.** at 45. Batterman states that he appeared at the court on November 1, 2022, and explained his illness. **Id.** at

46. He contends that the trial court judge subsequently issued bench warrants despite him voluntarily appearing at court and failed to schedule hearings when issuing a new bench warrant on November 3, 2022. *Id.* at 46-47. According to Batterman, the trial court should have lifted the bench warrant after he turned himself in. *Id.* at 46.

It is well settled that "a trial court has broad discretion regarding whether a request for continuance should be granted, [and] we will not disturb its decision absent an apparent abuse of that discretion." *In re K.J.*, 27 A.3d 236, 243 (Pa. Super. 2011) (citation omitted). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Id.* (citation and brackets omitted).

Here, the trial court scheduled the hearing on the underlying contempt petition for October 31, 2022. On that date, Batterman did not appear, allegedly because he had tested positive for Covid. N.T., 9/25/2023, at 85. He admits that he did not file a request for continuance with the trial court; instead, he claims that he faxed a letter to the trial court judge's chambers affirming that he had Covid and both emailed and mailed a copy of the letter

to Santo. *Id.* at 89-90.[5] The trial court issued a bench warrant for Batterman's arrest. Order, 10/31/2023. Batterman then came to the trial court on November 1, 2022, but left the courthouse before any claims were resolved. N.T., 9/25/2023, at 85-86. The trial court entered another order issuing a bench warrant for Batterman. Order, 11/3/2022.[6] According to the record, Batterman did not turn himself in until September 2023.

Based upon the information contained in the certified record on appeal, we conclude that Batterman waived his claim. Batterman never requested a continuance of the October 31, 2022 hearing, and the trial court never ruled on such a motion. Instead, he cites to an extra-record letter he purportedly faxed to the court on the date in question. The law is well settled that this Court cannot consider any documents or information that are not contained in the certified appellate record. *See Parr v. Ford Motor Co.*, 109 A.3d 682, 695 n.10 (Pa. Super. 2014) (en banc) (stating that "any document which is not part of the officially certified record is deemed non-existent—a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record."). Furthermore, Batterman did not raise any claims related to this continuance until he appeared in court

---

[5] Batterman attached a letter dated October 31, 2022, to his brief but it was not included in the certified record and this Court cannot independently confirm that the letter was sent to either the trial court or Santo on that date.

[6] As noted above, the trial court initially entered the order on November 1, 2022, but amended the order on November 3, 2022.

in September 2023.  Because Batterman seeks the requested relief for the first time on appeal, we find the claim waived.  **See** Pa.R.A.P. 302(a).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  1/15/2025