J-A21039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHAD BATTERMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SILVIA SANTO | : | No. 469 EDA 2024 |

Appeal from the Order Entered January 11, 2024
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  PACSES: 267116855

BEFORE:  KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM PER CURIAM:                    **FILED JANUARY 17, 2025**

Chad Batterman ("Batterman") appeals pro se from the order entered by the Philadelphia County Court of Common Pleas ("trial court") finding him to be in contempt of a child support order.  Upon careful review, we affirm.

Batterman and Silvia Santo ("Santo") were married on November 29, 2014, and separated three years later.  The parties have two children, born in October 2015 and October 2017.  In December 2017, Santo filed a complaint for child support.  On June 22, 2018, the trial court entered a final child support order calculating Batterman's monthly child support obligation for the two children to be $686.00 per month.  On October 1, 2018, Batterman filed a petition to modify the support order.  Following protracted proceedings during which Batterman filed another petition to modify the order and,

separately, was found in contempt of the support order,[1] the trial court entered an order on February 20, 2020, directing Batterman to pay $674.48 per month for the support of his two children. This Court affirmed that order. *See Santo-Batterman v. Batterman*, 1258 EDA 2020 (Pa. Super. Aug. 23, 2021) (non-precedential decision).

Subsequently, the trial court found Batterman in contempt of the support order in September 2023. The trial court sentenced Batterman to thirty days in prison with a purge factor of $5,000. Batterman paid the purge factor that same day and was released from prison. On November 30, 2023, Santo filed a petition for contempt of the support order based upon Batterman's failure to make regular child support payments as ordered.

The trial court held a hearing on Santo's contempt petition January 11, 2024.[2] At the hearing, Batterman testified that he was unable to make payments because he had medical problems that inhibited his ability to work.

_____

[1] The trial court has set forth an extensive recitation of the facts in its opinion. *See* Trial Court Opinion, 4/15/2024, at 2-12. Notably, in September 2018, the trial court found Batterman in civil contempt of the support order and sentenced him to thirty days in prison with a purge factor of $7,500. Batterman paid this purge factor that same day and was released from prison. Batterman appealed this order, but this Court dismissed the appeal for failure to file a brief. *See Batterman v. Santo*, 2940 EDA 2019 (Pa. Super. 2020) (per curiam order).

[2] At the hearing, the trial court also considered Batterman's petitions for contempt of support order by Santo. The trial court found Santo was not in contempt, and Batterman filed an appeal of this determination at 470 EDA 2024, which we address by separate memorandum decision.

- 2 -

Ultimately, the trial court found Batterman in contempt of the support order, sentenced him to thirty days in prison and imposed a purge factor of $5,000. Batterman immediately paid the purge factor and was released from prison. Batterman filed a timely appeal and raises numerous claims for our review.

## **Finding Batterman in Contempt**

First, Batterman argues that the trial court erred in finding him in contempt. Batterman's Brief at 2, 40-41, 42. He contends that he has no assets and was assigned an earning capacity of $26,000 per year, but must pay child and spousal support, the children's health insurance, and fund his own needs. *Id.* at 3, 6, 22, 24, 34-35; *see also id.* at 34 (noting that he has outstanding hospital and doctor bills resulting from his inability to work). Batterman asserts that he could not comply with the support order because he was unable to work and earn income and has no assets. *Id.* at 7, 12, 15, 20, 23-24; *see also id.* at 6-7, 19 (contending the trial court erred in calculating his arrears, arguing it should have considered his inability to work and earn an income for a period of at least fifty-nine months). He claims the trial court judge ignored the undisputed evidence that a doctor ordered he could not work following his hospitalization in June 2023, and that there was a backlog for him to gain access to testing centers and specialty doctors for a proper diagnosis. *Id.* at 3-6, 16-18, 19, 20, 21-22, 28-29. Batterman points out that he is on supplemental nutrition assistance program benefits and that multiple courts have granted him in forma pauperis status based on his own

inability to pay fees, which he contends establishes his indigency and poverty. *Id.* at 9, 25-26, 33-34, 36-37. In Batterman's view, the trial court should have modified and/or suspended the support order. *Id.* at 13-14, 23; *see also id.* at 18-19, 38-39 (noting that Santo refuses to work a fulltime job to support the children and fails to contribute to the children's extracurricular activities).

Batterman acknowledges that his parents pay his purge factors to keep him out of prison, but asserts that this has presented a hardship for them, requiring them to cash in retirement funds, obtain loans, or sell things to pay the court. *Id.* at 7-8, 9, 32-33. He further contends that his parents' money is not relevant in determining his ability to pay, and the trial court's reliance on his parents' wealth prejudices him. *See id.* at 8, 15-16, 23, 24, 26-27, 31, 32, 39-40, 41; *see also id.* at 24-25, 26 (asserting there is no support in the record for the trial court's finding that his parents provide him a lavish lifestyle). Batterman states that his parents will not pay his child support and that his parents' prior payment of court fees is irrelevant to the instant case. *Id.* at 31-32, 34-35, 41; *see also id.* at 41-42 (arguing that his parents are free to spend their money how they wish). According to Batterman, and contrary to what he believes to be the trial court's finding, the definition of income under the Domestic Relations Code does not include paternal grandparents paying for reasonable living costs or owning the home in which Batterman lives. *Id.* at 10-11.

We will reverse an order granting a civil contempt petition only if the trial court misapplied the law or exercised its discretion in a manner that lacked reason. *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa. Super. 2012). "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute." *Habjan v. Habjan*, 73 A.3d 630, 637 (Pa. Super. 2013) (citation omitted); *see also* Pa.R.Civ.P. 1910.25. The general rule in proceedings for civil contempt is that "the burden of proof rests with the complaining party to demonstrate, by a preponderance of the evidence, that the defendant is in noncompliance with a court order." *Habjan*, 73 A.3d at 637 (citation omitted).

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

*Id.* (citation omitted). "The purpose of civil contempt is to compel performance of lawful orders, and in some instances, to compensate the complainant for the loss sustained. When contempt is civil, a court must impose conditions on the sentence so as to permit the contemnor to purge himself." *Gunther v. Bolus,* 853 A.2d 1014, 1018 (Pa. Super. 2004) (citations and quotation marks omitted).

Here, the record establishes that the trial court entered a child support order in February 2020, Batterman had notice of the order, and Batterman has failed to make the required monthly payments. N.T., 1/11/2024, at 32; **see also** Trial Court Opinion, 4/15/2024, at 20 ("[Batterman] has clearly failed to comply with the child support order, as evidenced by the high amount of arrears amassed and his complete lack of regular payments on his support obligation."). To that end, Batterman has accumulated arrearages totaling $10,089.78, N.T., 1/11/2024, at 31, 58, 62, and the trial court has previously found him in contempt of this child support order for nonpayment. **See id.** at 31-32. As the trial court stated on the record at the hearing:

> [T]here have been no payment[s] other than purges and ordered payments from the [trial c]ourt in lump sum. The last one as you said hit 10/10/23. I believe it was from another county. $19,685. Prior to that, [] Batterman was found in … civil contempt on October, 2023 where a $5,000 purge was set. That purge was paid pretty much immediately, same day. Prior to that March 15, 2021[,] there was a $4,000 payment. I am not sure, that was not a purge but it was a lump sum payment. Prior to that, September 19th of 2019, there was a $7,500 payment. That was the same day purge again ….

**Id.**

There appears to be no question that Batterman has failed to comply with the support order, which generally is sufficient to establish his willful violation. **See Godfrey v. Godfrey**, 894 A.2d 776, 783 (Pa. Super. 2006) (concluding that the evidence of record supported the trial court's finding that the father willfully violated the child support order where father never complied with the support order and had accumulated substantial arrearages).

Batterman argues, however, that his noncompliance is not willful, but that he is unable to meet his child support obligations and therefore cannot be found in contempt. To that end, Batterman seeks to relitigate the calculation of his earning capacity based upon his inability to work for a period of over four years. In so arguing, he relies on various doctors' reports detailing this inability. We note, however, that Batterman presented this evidence to the trial court, which found it to be unpersuasive and incredible:

> [Batterman] presented doctor's notes that he purported to support his claims that he cannot work because he is injured. His evidence did not support his claim. Some of his doctor's notes were vague and open-ended, such as one from February 2023 that stated [Batterman] could return to work "once MRI is completed" with no confirmation of whether an MRI was ever done. Other notes referred to minor injuries[,] but did not conclude that the claimed injuries prevented [Batterman] from doing any type of work at all. For example, two injuries [Batterman] claimed prevented him from doing any type of work were having two fractured toes and a sprained wrist ([Batterman's] Exhibit A, doctors notes dated September 11, 2019 and October 22, 2019). This alleged documentation of [Batterman's] inability to work was not persuasive at all.

Trial Court Opinion, 4/15/2024, at 18-19. We must defer to the trial court's credibility determinations and conclude that Batterman's claim that he was unable to work is not supported by the record. *See Habjan*, 73 A.3d at 644.

Additionally, Batterman takes issue with the trial court's reliance on his parents' financial support in the form of living expenses, payment for vacations, and payment of prior purge factors each time after he was found in contempt. Batterman argues the trial court erred in finding his parents' financial aid was properly calculated as part of his income.

"The starting point for calculation of a parent's child support obligation is a determination of each party's income available for support." ***Mencer v. Ruch***, 928 A.2d 294, 297 (Pa. Super. 2007). "The assessment of the full measure of a parent's income for the purposes of child support requires courts to determine ability to pay from all financial resources" and "the court must consider all forms of income." ***Id.*** (citation and quotation marks omitted).

For purposes of child support, "income" is defined as follows:

**"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. § 4302. Notably, "[w]hile this definition is expansive, it includes neither gifts nor loans." ***Suzanne D. v. Stephen W.***, 65 A.3d 965, 970 (Pa. Super. 2013); ***see also id.*** ("Because a gift is given not in exchange for services, it does not meet the statutory definition of income.").

We conclude that Batterman is correct that the funds he receives from his parents cannot be counted as "income." The record reflects that Batterman's parents' financial assistance includes the cost of his monthly rent

($3,000), his utilities and other living expenses, and paying for his and the children's health insurance. **See** Trial Court Opinion, 4/15/2024, at 22. Such payments are properly classified as a gift or a loan. ***See Suzanne D.***, 65 A.3d at 971, 973 (finding that paternal grandfather's payment of private school tuition, children's medical expenses, and extracurricular activities were gifts). As gifts, the money provided to Batterman cannot be considered "income" for child support purposes. ***See id.*** at 972 ("Monetary gifts from family members are a common practice, and would not have been unknown to the drafters of the statute. Had the General Assembly wished to include gifts as income for support, it would have done so."). Therefore, the trial court erred in finding these gifts by Batterman's parents constitute "income" under 23 Pa.C.S. § 4302.

Nevertheless, gifts may be included in determining whether a party can pay child support. ***See Mencer***, 928 A.2d at 297 (noting in determining the amount of child support, courts may consider all the parent's financial resources); ***see also Suzanne D.***, 65 A.3d at 973 (noting that gifts, which are likely to continue, can be considered in supporting an upward deviation for child support). Batterman does not dispute the trial court's finding that he receives support and resources from his parents, "yet he refuses to pay any of it to support his children unless he is faced with a jail sentence and purge factor." Trial Court Opinion, 4/15/2024, at 20.

"[A] parent's duty to support his minor children is absolute, and the purpose of child support is to promote the children's best interests. The court has no legal authority to eliminate an obligor's support obligation, where the obligor can reasonably provide for some of the children's needs." **Silver v. Pinskey**, 981 A.2d 284, 296 (Pa. Super. 2009) (citation omitted). "The support of a spouse or child is a priority obligation so that a party is expected to meet this obligation by adjusting the party's other expenditures." Pa.R.Civ.P. 1910.16-1(a)(4).

Simply stated, the record supports the trial court's finding that Batterman had the ability to pay child support in accordance with its order but willfully failed to do so. We therefore conclude that the trial court did not abuse its discretion in finding Batterman to be in contempt of the child support order.[3]

**Prison Sentence in Contravention of Doctors' Orders**

In his second claim, Batterman argues that the trial court erred in ordering him to prison, despite orders from two doctors indicating that he should not be sent to prison. Batterman's Brief at 42-44. Batterman points to exhibits entered at the hearing wherein doctors stated that his illness would prevent him from attending hearings or being in "situations where it would be impossible for him to leave if the symptoms should recur." **Id.** at 43.

_____

[3] **See Bank of Am., N.A. v. Scott**, 271 A.3d 897, 908 (Pa. Super. 2022) (stating that this Court may affirm on any legal basis supported by the record).

According to Batterman, the trial court's failure to heed the doctors' warnings was error and placed him in danger. *Id.* at 43, 44.

Our review of the record reveals, and the trial court's opinion confirms, that Batterman failed to raise the claim that he could not be placed in prison based on doctors' orders before the trial court. *See* Trial Court Opinion, 4/15/2024, at 21. Moreover, Batterman does not cite to any place in the record where a doctor stated that his medical problems precluded his incarceration. *See id.* ("[T]here is no factual or evidentiary basis for this claim. [Batterman] neither presented nor referenced any order from a doctor claiming [he] should not be incarcerated, so any order sentencing him to incarceration could not possibly be 'in defiance of doctors orders.'"); *see also* Pa.R.A.P. 2119(c) ("If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appear."). Therefore, the claim is waived on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

## Parents' Finances

In his third claim, Batterman argues that the trial court judge erred in concluding his parents are "like his private bank account" and should pay his child support obligations. Batterman's Brief at 44. Batterman asserts that

the judge improperly focused on the size of the house and property where he lives, the value of the house, and the payments made by his parents for utilities, health insurance, and other items. *Id.* at 44-45. Batterman believes the trial court judge is "infatuated and enamored" with his parents and that the judge should have weighed his current financial situation and inability to pay, rather than his parents' financial situation. *Id.* at 45.

The trial court, citing an October 19, 2023 order denying Batterman's petition to proceed in forma pauperis, indicated it assessed the totality of Batterman's income and resources in determining whether he was able to meet his child support obligation:

> According to [Batterman's] testimony, his parents "loan" him his monthly rent of $3,000 and they pay for his electricity, oil, heat, and all his groceries. [Batterman's] parents pay for his health insurance and health insurance for his children. [Batterman] uses a cell phone paid for by his father. …
>
> [Batterman] has also been able to use family financial resources to pay for a custody evaluation costing $15,000 in 2021 and a forensic mental health evaluation in Montgomery County costing approximately $10,000 in 2023.

Trial Court Opinion, 4/15/2024, at 22 (citation omitted).

We view this claim as another argument in support of finding his inability to pay. As we have already determined, the trial court did not abuse its discretion in utilizing the gifts and loans provided by Batterman's parents to conclude that he can afford the child support obligation ordered. *See supra*, pp. 8-9. Therefore, we do not find merit in Batterman's claim.

## Trial Court as Advocate

- 12 -

In his fourth claim, Batterman argues that the trial court judge did not act as a neutral arbiter and instead acted as an advocate for Santo. Batterman's Brief at 45-47. Batterman contends that the judge excessively questioned him even though Santo had counsel. *Id.* at 46, 47. According to Batterman, the judge did not act impartially at the hearing. *Id.* at 46.

Our review of the record reveals, and the trial court's opinion again confirms, that Batterman did not raise this claim before the trial court.[4] *See* Trial Court Opinion, 4/15/2024, at 22-23.[5] Therefore, the claim is waived on appeal. *See* Pa.R.A.P. 302(a).

## Purge Amount

In his fifth claim, Batterman argues that the "judge erred as a matter of law by setting a purge amount of $5,000." Batterman's Brief at 47. In support of his claim, Batterman only states "[s]ee error number 1, 2, 3, 4, 6, and 7." *Id.*

---

[4] Although Batterman argues he raised this claim in his motion to recuse, this motion was filed prior to the hearing and does not (indeed, it could not) account for the judge's questioning at the hearing.

[5] The trial court also rejects Batterman's claim on the merits pursuant to Pennsylvania Rule of Evidence 614(b). Trial Court Opinion, 4/15/2024, at 18; *see* Pa.R.E. 614(b) ("the court may examine a witness regardless of who calls the witness"). The trial court states that it asked "clarifying questions during testimony, questioning both parties." Trial Court Opinion, 4/15/2024, at 18. It thus concluded that asking "brief, unbiased questions of both parties" was not unreasonable and did not constitute an abuse of discretion. *Id.*

Batterman's incorporation by reference to other portions of his brief is insufficient to allow this Court to review the separate claim raised. ***See*** Pa.R.A.P. 2119(a) (stating argument must contain analysis and citation to pertinent analysis); ***Franciscus v. Sevdik***, 135 A.3d 1092, 1097 (Pa. Super. 2016) (noting courts do not permit parties to incorporate by reference arguments "as a substitute for the proper presentation of arguments in the body of the appellate brief") (citation omitted). Therefore, Batterman waived this claim for appellate review. ***See Moranko v. Downs Racing LP***, 118 A.3d 1111, 1117 n.3 (Pa. Super. 2015) (en banc) ("It [is] well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal.").[6]

## Recusal

In his sixth claim, Batterman contends that the trial court erred as a matter of law in refusing to hear his emergency motion for recusal and disqualification of the judge.[7] Batterman's Brief at 47-48. Batterman raised the identical claim in his separate appeal from the trial court's denial of his

---

[6] The trial court found that it did not err in imposing the purge amount of $5,000, noting Batterman had the present ability to pay the amount. ***See*** Trial Court Opinion, 4/15/2024, at 24-26. The trial court cited to Batterman's own testimony that implied his parents would pay the purge factor. ***See id.*** at 25-26.

[7] Although Batterman alleges he filed two separate recusal motions — on January 9 and 10, 2024, the docket in this case reveals he only filed a recusal motion on January 10, 2024.

contempt petition, which was heard on the same date and at the same hearing as the petition for contempt underlying this appeal. ***See Batterman v. Santo***, 470 EDA 2024, **10-13 (Pa. Super. Jan. 15, 2025). As this issue has already been decided, no relief is due.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/17/2025