J-A21038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHAD BATTERMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SILVIA SANTO | : | No. 2887 EDA 2023 |

Appeal from the Order Entered October 6, 2023
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2019-06877

BEFORE:  KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM PER CURIAM:                    **FILED FEBRUARY 13, 2025**

Chad Batterman ("Batterman") appeals pro se from the order entered by the Montgomery County Court of Common Pleas ("trial court") resolving twenty-four petitions filed by Batterman and six petitions filed by Silvia Santo ("Santo").  Upon careful review, we affirm in part and vacate in part.

This case has an extremely lengthy procedural history related to the custody battle concerning the parties' children, C.B. and D.B.  By way of background, in July 2021, the trial court entered a custody order granting Santo sole legal custody and primary physical custody of the children, and Batterman partial physical custody.  In April 2022, Santo filed multiple emergency petitions, alleging Batterman had not returned the children to

Santo as required under the July 2021 order.[1] The trial court found Batterman in contempt and imposed various sanctions, including placing Batterman on probation for sixth months and ordering him to relinquish custody time with the children to "makeup time." This Court affirmed the order. ***See Batterman v. Santo***, 1371 EDA 2022, 2023 WL 128649 (Pa. Super. Jan. 9, 2023) (non-precedential decision).

The trial court explained the procedural history underlying the instant case as follows:

> Between July 7, 2023[,] and August 11, 2023, [Batterman] filed 24 petitions with the court requesting various forms of relief (during that time period [Santo] also filed six petitions for relief including preliminary objections to certain of [Batterman]'s filings, a petition to modify custody and a petition for contempt). The [trial] court initially scheduled a hearing for September 15, 2023 (by way of July 27, 2023 and August 4, 2023 scheduling orders) to address each of the petitions.
>
> On August 14, 2023, [Santo] filed a Petition for Emergency Special Relief. In the petition, [Santo] alleged that [Batterman] was unilaterally withholding custody of [the Children] and was otherwise in violation of multiple court orders. By August 15, 2023 "Temporary Order," th[e trial] court granted temporary sole physical custody of the Children to [Santo] and directed [Batterman] to return custody of the Children to [Santo] at 4:00 p.m. on that same date.
>
> On August 17, 2023[, Santo] filed two petitions, entitled Petition for Emergency Contempt and Motion for the Issuance of a Bench Warrant alleging, inter alia, that [Batterman] had disregarded the August 15, 2023 temporary order, was

---

[1] The trial court noted that "Father has a documented history of unilaterally withholding custody of the Children for extended periods of time in contravention of court orders." Trial Court Opinion, 1/5/2024, at 2 n.4.

- 2 -

withholding custody of the Children and that [Santo] did not know the whereabouts of the Children.

By August 17, 2023 order, th[e trial] court scheduled an emergency hearing for August 18, 2023[,] to address the matter. The August 17, 2023 order directed both [Santo] and [Batterman] to appear and provided that the court "shall be prepared to take testimony and consider evidence at that time." In addition to the normal service, the court emailed the order to [Santo] and [Batterman] at their respective email address of record.

At the August 18, 2023 hearing, [Santo] and her counsel, Joseph A. Donegan, Esquire appeared and [Batterman] failed to appear. Marc Neff, Esquire, who had entered his appearance on behalf of [Batterman] July 13, 2023 "with respect to the Indirect Criminal Contempt only" also did not appear. Under questioning from Mr. Donegan, [Santo] testified that [Batterman] unilaterally withheld custody of the Children by failing to return them to her custody on August 14, 2023[,] as required the July 16, 2021 custody order of the Honorable Melissa S. Sterling. N.T., 8/18/2023, p. 11. [Santo] testified that [Batterman] responded to her August 14, 2023 Our Family Wizard ("OFW") query that "he was utilizing makeup time that he was owed." N.T., 8/18/2023, p. 6-9.[2] [Santo] testified that in the following days, she reached out via OFW to [Batterman] and by text message to [Batterman]'s parents to advise of the August 15, 2023 order and "to at least give me a location of where the children are." N.T., 8/18/2023, p. 10-12. [Santo] testified that [Batterman] last logged into OFW on August 14, 2023 at "11:31, 11:30 a.m." N.T., 8/18/2023, p. 12. [Santo] testified that she went to the police who were also "unable to find any of the family members." N.T., 8/18/2023, p. 13. [Santo] testified that the police were previously involved in a similar situation in 2018 when [Batterman] "left with the children [...] for approximately ten days." N.T., 8/18/2023, p. 16-17.

---

[2] Notably, on April 27, 2022, the trial court entered an order stating that neither party is entitled to makeup time absent a court order, and that "Father's future invocation of makeup time to deprive Mother of custody shall be considered contemptuous." Trial Court Order, 4/27/2022. Subsequently, on July 13, 2023, the trial court entered an order, which stated, inter alia, that "[n]either party is entitled to any makeup time, based on any prior custody issues or into the future, unless specifically ordered by the [c]ourt." Trial Court Order, 7/13/2023.

[Santo] testified that [Batterman]'s parents have assisted [Batterman] in the past with respect to his unilateral withholding of custody. N.T., 8/18/2023, p. 13-14. [Santo] testified that she was "[a]bsolutely" concerned and in "fear" because (i) she did not know where her children were, (ii) [Batterman] was refusing to respond[,] and (iii) [Batterman] was apparently planning to take the [c]hildren out of state on that day (August 18, 2023) but had failed to provide an itinerary. N.T., 8/18/2023, p. 14-15. Indeed, [Santo] testified that she did not know where [Batterman] intended to take the [c]hildren. N.T., 8/18/2023, p. 16. [Santo] testified that the prior year, [Batterman] had taken the [c]hildren on vacation but only provided "[l]Jess than 24-hour notice that he was getting on a flight with the kids to California." N.T., 8/18/2023, p. 14.

[Santo] offered exhibits that were entered into the record. Exhibit 'M-2' contained OFW messages dated August 9, 2023[,] and August 14, 2023[,] from [Batterman] that violated the June 6, 2023 order limiting OFW messages to 100 words and prohibiting disparaging language. Exhibit 'M-4' consisted of a log providing that [Batterman] had "[n]ever viewed" one OFW message sent from [Santo] to [Batterman] on August 14, 2023 (entitled "August 14, 2023 custody") and two OFW messages on August 15, 2023 (entitled "Urgent custody today"). Exhibit 'M-5' consisted of text communications from [Santo] to [Batterman] showing a copy of the August 15, 2023 temporary order and asking when [Batterman] would be returning the [c]hildren. Exhibit 'M-6' consisted of a copy of this court's August 17, 2023 email advising the recipients (including both [Santo] and [Batterman]) of the August 18, 2023 emergency hearing and a copy of an email from [Santo] to [Batterman]'s parents advising of the August 18, 2023 emergency hearing.

Following the hearing, the court issued an August 18, 2023 order which, inter alia, provided for the issuance of a bench warrant based on [Batterman]'s failure to appear and provided that [Batterman] was in contempt of certain orders but made no finding with respect to any contempt sanctions so that the question of contempt and any sanctions could be further addressed at a subsequent hearing.

The court found [Santo] to be credible and her stated concern and "fear" with respect to her missing Children to be genuine.

On September 13, 2023, Mr. Neff reached out to the court with respect to the outstanding bench warrant. The court scheduled a conference call with counsel on that date and was informed that (i) [Santo] now had sole physical custody of the [c]hildren after [Batterman] returned from an out-of-state vacation, (ii) upon his return from vacation, [Batterman] had been criminally charged in connection with allegedly violating the existing custody order(s), and (iii) [Batterman] wanted to turn himself in to address the bench warrant.

Mr. Neff requested hybrid representation, noting that he would be representing [Batterman] with respect to contempt matters and [Batterman] would represent himself with respect to custody related matters. Mr. Neff advised that he would be representing [Batterman] at least through the preliminary hearing of the criminal case and that he may be advising [Batterman] not to testify with respect to alleged contempt issues relating to the criminal charges. Mr. Neff advised the court that [Batterman] first intended to address his outstanding bench warrant in Philadelphia (for allegedly violating a child support order involving the [c]hildren). [Batterman was found in contempt in Philadelphia County and sentenced to prison with a purge factor of payment of $5,000 toward child support arrears. Batterman's parents paid the purge immediately and Batterman was released from prison.]

The [trial] court advised counsel that it would hold a hearing and would entertain whatever the parties and counsel wished to present relevant to contempt, sanctions and the outstanding petitions. During the call, the [trial] court identified October 5, 2023[,] as the date for the hearing (and entered a scheduling order that date).

[Santo], [Batterman] and both counsel appeared at the October 5, 2023 hearing. The [trial] court took testimony and entertained argument from counsel for both parties and from [Batterman]. The court provided [Batterman] with the opportunity to testify, call witnesses and be heard with respect to his various petitions and contempt matters. [Batterman] did indeed testify and called and questioned witness ([Santo]). During this testimony, [Batterman]'s mother confirmed that she,

her husband, [Batterman], his girlfriend and the [c]hildren had indeed traveled to Delaware on their last trip (and that she and her husband had financed the vacation). N.T., 10/6/2023, p. 25.

Following the hearing, the court issued an order finding [Batterman] (i) in civil contempt of various orders, (ii) not in criminal contempt of any order and (iii) in violation of probation imposed by July 11, 2023 order.

Trial Court Opinion, 1/5/2024, at 1-6 (footnotes and emphasis omitted, footnote added).

The trial court imposed sanctions of six months of incarceration, with purge factors. The purge factors required that Batterman: (1) make a payment of $19,685.57 to Santo through the Pennsylvania Automated Child Support Enforcement System; (2) produce the forensic psychological evaluation ordered by the trial court; (3) be willing and able to comply with any recommendations set forth in the evaluation; and (4) resolve any outstanding bench warrants in other jurisdictions. Batterman made the child support payment within twenty-four hours of the entry of the order, and fulfilled the remaining factors on October 11, 2023. The trial court ordered Batterman's release from prison on October 16, 2023.

Additionally, in the October 6, 2023 order, the trial court found Batterman was not in criminal contempt for failing to appear at the August 18, 2023 hearing. Finally, the trial court found that Batterman to be in violation of the probation sentence imposed on July 11, 2023. The trial court reimposed probation for six months and ordered Batterman to comply with existing orders in the case as a condition of the probation. Batterman filed a

timely notice of appeal. Batterman also attached a statement of errors complained of on appeal containing ninety-nine issues.

On appeal, Batterman now raises forty-seven claims for our review. A substantial number of Batterman's claims — 4, 6, 7, 8, 11, 12, 13, 15, 16, 18, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 34, 35, 36, 40, 41, 42, 43, 44, and 45 — only incorporate by reference other portions of his brief, without further discussion or argument. Such incorporation by reference to other portions of his brief is insufficient to allow this Court to review the separate claim raised. **See** Pa.R.A.P. 2119(a) (stating argument must contain analysis and citation to pertinent analysis); **Franciscus v. Sevdik**, 135 A.3d 1092, 1097 (Pa. Super. 2016) (noting courts do not permit parties to incorporate by reference arguments "as a substitute for the proper presentation of arguments in the body of the appellate brief") (citation omitted). Therefore, Batterman waived these claims for appellate review. **See Moranko v. Downs Racing LP**, 118 A.3d 1111, 1117 n.3 (Pa. Super. 2015) (en banc) ("It [is] well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal."). We therefore proceed to review the remaining sixteen claims raised, several of which overlap, and we address together.

**Civil Contempt**

Batterman first argues that the trial court abused its discretion by finding him in civil contempt. Batterman's Brief at 2. He claims that he was

unaware of the August 15, 2023 order, the August 17, 2023 scheduling order, and the August 18, 2023 order, as he was never sent the orders. *Id.* at 3-4, 8, 10, 19. Batterman highlights that the prothonotary was required to send any orders to him via first class mail because this Court had ordered the trial court to deactivate Batterman's access to electronic filing in January 2023. *Id.* at 3-4, 5. He asserts that the trial court improperly found that he was served the order by email. *Id.* at 4-5; *see also id.* at 5 (noting there is no evidence of an email being sent to Batterman). Batterman further notes that the fact that Santo texted the August 15, 2023 order to him and posted it on the OFW does not constitute service, and does not show he had knowledge of the order. *Id.* at 8-9, 10-13.

Additionally, Batterman contends that the trial court improperly modified the parties' custody arrangement where there was no petition to modify pending. *Id.* at 7, 16. According to Batterman, the July 16, 2021,[3] and August 19, 2021 custody orders[4] do not require the parties to agree to

_____

[3] In the nine-page July 16, 2021 order, the trial court extensively set forth the parties' legal and physical custody rights. *See* Trial Court Order, 7/16/2021, at 1-9. Notably, in this order the trial court indicated that a party is entitled to makeup custodial time if he/she accommodates a request by the other parent for custody for a special occasion during the opposing party's custodial time. *Id.* at 7.

[4] The August 19, 2021 order stated the following:

…it is hereby ORDERED and DECREED:

*(Footnote Continued Next Page)*

his makeup time with Children. *Id.* at 6-7, 14. Batterman also argues that he complied with the July 2021 custody order, observing that religious holidays take precedence over regular custodial time, and that in 2023, he complied with the order by transferring Children to Santo for Easter, but Santo failed to transfer Children back for his custody time during spring break. *Id.* at 13-14. Batterman notes that the August 2021 custody order modified the July 2021 order and specifically states that if a parent's holiday time is preempted by a religious holiday, the other party is entitled to a makeup day. *Id.* at 14-17. He further maintains that the April 27, 2022 and July 13, 2023 orders were not clear and did not establish the prohibited conduct. *Id.* at 17.

_____

1. Paragraph 7 of the Custody Court Order dated July 16, 2021[,] shall be amended as follows; Religious holidays shall take precedence over non-religious holidays/federal holidays. In the event that a party's holiday time is preempted by a religious holiday, the other party shall have a non-school make-up day equal to the same amount of hours he or she gave up for the religious holiday.

2. This order resolves the Emergency Motion Regarding Conflicting Holidays in the July 16, 2021 Custody Order which was filed on August 5, 2021 (Sequence 280).

3. For September of 2021. Father shall have the children for Rosh Hashanah which preempts Mother's Labor Day holiday. Father shall pick the children up on Sunday September 5th at 3:00 p.m. through Wednesday the 8th at 7:00 p.m.

4. Mother's make up time shall occur during Father's weekend custody from after school on September 10th through Saturday the 11th at 7:00 p.m.

Trial Court Order, 8/19/2021.

- 9 -

Batterman asserts that the trial court's reliance on a July 13, 2023 order, which provides that neither party is entitled to makeup time without a specific order by the trial court, is misplaced and that August 2021 order still applies. *Id.* at 14, 16-17. Batterman claims that the April 27, 2022 order had no effect on the parties' custodial rights or schedule as it was issued in connection with a contempt proceeding. *Id.* at 16.

"When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion." *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009) (citation omitted). "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute." *Habjan v. Habjan*, 73 A.3d 630, 637 (Pa. Super. 2013) (citation omitted); *see also* Pa.R.Civ.P. 1910.25. "The purpose of civil contempt is to compel performance of lawful orders, and in some instances, to compensate the complainant for the loss sustained. When contempt is civil, a court must impose conditions on the sentence to permit the contemnor to purge himself." *Gunther v. Bolus*, 853 A.2d 1014, 1018 (Pa. Super. 2004) (citations and quotation marks omitted).

The general rule in proceedings for civil contempt is that "the burden of proof rests with the complaining party to demonstrate, by a preponderance of

the evidence, that the defendant is in non[-]compliance with a court order."

***Habjan***, 73 A.3d at 637 (citation omitted).

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

***Id.*** (citation omitted). "The alleged contemnor may then present evidence that he has the present inability to comply and make up the arrears." ***Hyle v. Hyle***, 868 A.2d 601, 604 (Pa. Super. 2005).

Our review of the record reveals, and the trial court's opinion confirms, that Batterman did not raise the notice claim before the trial court. ***See*** Trial Court Opinion, 1/5/2024, at 12 (finding the notice claim waived for failing to raise it before the trial court); ***see also id.*** at 12-13 (concluding that Batterman "had actual notice of the August 15, 2023 hearing or was willfully avoiding being so notified ([Batterman] has a history of creating emergent situations by withholding custody and then claiming that he did not receive notice of the resulting hearing)"). Pointedly, the trial court held the matter open to for further proceedings on October 5, 2023, at which Batterman and his counsel appeared and presented evidence on the various open petitions. ***Id.*** at 13 ("[Batterman] certainly had notice of the resumption of the matter on October 5, 2023 — he and his counsel both appeared. When the hearing resumed on October 5, 2023, [Batterman] was provided a full opportunity to testify, call witnesses and create his record."). Batterman did not raise any

issues regarding the purported lack of notice of the entry of the August 15, 2023 order, the August 17, 2023 scheduling order, or the August 18, 2023 order. Therefore, Batterman's notice claim is waived on appeal. ***See In re Est. of Anderson***, 317 A.3d 997, 1004 (Pa. Super. 2024) (finding appellant waived claim that he did not receive notice of a hearing where he raised it for the first time on appeal).[5]

Additionally, we conclude that the trial court did not abuse its discretion in finding Batterman in contempt based on his failure to return the children to Santo. Batterman premises his claim concerning makeup days on the August 19, 2021 order, which provided that "[i]n the event that a party's holiday time is preempted by a religious holiday, the other party shall have a non-school make-up day equal to the same amount of hours he or she gave up for the religious holiday." Trial Court Order, 8/19/2021. However, the trial court entered multiple orders after explicitly stating that any makeup days were subject to court approval. ***See*** Trial Court Order, 7/13/2023, at 1 ("Neither party is entitled to any makeup time, based on any prior custody issues or into the future, unless specifically ordered by the Court."); ***see also*** Trial

---

[5] In any event, we note that on August 17, 2023, Santo filed a petition for emergency contempt, arguing that Batterman had not returned the children as required by the trial court's August 15, 2023 order. The trial court entered an order on August 17, 2023, scheduling a hearing on the contempt petition for August 18, 2023, directing both Batterman and Santo to appear. The order and docket indicate notice was provided to Batterman. ***See*** Trial Court Order, 8/17/2023; Docket Entry 785 ("Rule 236 notice provided on 08/17/2023").

Court Order, 4/27/2022. These orders were entered in response to Batterman's repeated use of purported makeup time (which may or may not have been owed) to make unilateral custody determinations; to quell this behavior, the trial court entered orders stating it must approve any makeup time. *See* Trial Court Opinion, 1/5/2024, at 15; *see also* Trial Court Opinion, 1/5/2024, at 3 n.6 (Batterman "has continually used the invocation of 'makeup time' as a strategy to unilaterally withhold custody of the Children despite clear orders directing that he not do so."); *J.M. v. K.W.*, 164 A.3d 1260, 1268 (Pa. Super. 2017) ("all custody awards are temporary insofar as they are subject to modification by an ensuing court order any time that it promotes the child's best interest").

Significantly, the trial court specifically rebutted Batterman's claim that the August 19, 2021 order controlled makeup days, noting that the July 13, 2023 order expressly governs the issue of makeup time, not the August 19, 2021 order. Trial Court Order, 8/15/2023, at 2 n.2 ("The July 13, 2023 [o]rder governs the issue of makeup time, not Judge Wall's August 19, 2021 Order of two years ago."); *see also* Trial Court Opinion, 1/5/2024, at 13 n.13 (stating that notwithstanding the clear language of the July 13, 2023 order, "Batterman continues to justify unilaterally withholding the [c]hildren — at his personal discretion — based on his interpretation of Judge Wall's August 19, 2021 order"). Batterman had notice of the July 13, 2023 and April 27, 2022

orders, which control the issue of makeup time, and cannot unilaterally decide which orders to follow.

Additionally, the trial court found Batterman violated the July 16, 2021 custody order and the August 15, 2023 order:

> [The] July 16, 2021 custody order, inter alia, provides for (i) the precise times that Father is permitted to exercise his physical custody, (ii) specific instruction with respect to how each parent shall provide a vacation itinerary to the other, (iii) reasonable electronic communications between the non-vacationing parent and the [c]hildren[,] and (iv) daily telephone or video communications between the non-custodial parent and the [c]hildren.  Father clearly violated each of the foregoing terms of the custody order. …

> [The August 15, 2023 order] directed Father to return the [c]hildren to Mother's custody by 4:00 p.m. on that date.  Mother testified that she provided Father with a copy of the order via text message, OFW communication[,] and "sent it to both his parents." N.T., 8/18/2023, p. 9-14.  The court found that Father knew of this order (although he may have taken steps to avoid having "actual notice" — a strategic tactic he has used previously — and withheld the [c]hildren for numerous days thereafter in contempt thereof.

Trial Court Opinion, 1/5/2024, at 14-15, 16.  There is record support for these findings as well.  ***See, e.g.,*** N.T., 8/18/2023, at 5-7 (Santo testified Batterman was in violation of the July 16, 2021 order by refusing to return the children to her in accordance with the order, and noting Batterman indicated he was due makeup time); ***id.*** at 9-14 (Batterman was supposed to return the children to Santo by 4:00 p.m. on August 15, 2023, pursuant to a court order, but he failed to do so); ***id.*** at 6, 7, 11 (introducing various exhibits showing the communications between Batterman and Santo about returning the

children in accord with the custody order); *id.* at 13 (Santo indicated she did not know where the children were and had no contact with them); *id.* at 14, 16 (noting that Batterman had not provided his vacation itinerary to Santo for an upcoming vacation); *see also* N.T., 6/7/2023, at 9-14 (Santo indicated she had primary physical custody and Batterman had partial physical custody pursuant to the child custody order and Batterman withheld custody from Santo based on his unilateral decision that he is due makeup time); N.T., 12/2/2022, at 33 (wherein Santo indicated she was only able to Facetime with the children one or two times during Batterman's vacation to California).

Batterman had notice of the orders in question, willfully failed to comply with the orders, and acted with wrongful intent. *See Godfrey v. Godfrey*, 894 A.2d 776, 783 (Pa. Super. 2006) (concluding that the evidence of record supported the trial court's finding that the father willfully violated the child support order where father never complied with the support order and had accumulated substantial arrearages). Therefore, Batterman's first claim does not entitle him to relief.

**Due Process Rights**

In his second claim, Batterman contends that the trial court violated his due process rights by finding him in contempt before the October 5, 2023 hearing. Batterman's Brief at 19, 20. Batterman argues that the trial court entered its finding without allowing him to present evidence to establish his compliance with the orders in question. *Id.* Batterman claims that the trial

- 15 -

court suspended his custody when issuing the August 15, 2023 order as a means of punishing him, and that such a punishment is not an allowed sanction. *Id.* Further, Batterman asserts that he was unable to present evidence to contravene Santo's petition for contempt of custody filed on July 19, 2023. *Id.* at 20. According to Batterman, the allegations of Santo's petition did not establish he was in contempt. *Id.* at 20-21. Batterman goes on, contending that the trial court had rendered a decision on the pending petitions prior to receiving any testimony, thus demonstrating that the trial judge was biased and should have recused himself. *Id.* at 21.

> A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary. Due process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues. …
> It is well settled that procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. Significantly, the in-court presentation of evidence is a fundamental component of due process. In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.

*Interest of S.L.*, 202 A.3d 723, 729 (Pa. Super. 2019) (citations, quotation marks, and brackets omitted). "[W]hen the contempt proceedings are predicated on a violation of a court order that followed a full hearing, due process requires no more than notice of the violations alleged and an opportunity for explanation and defense." *Diamond v. Diamond*, 792 A.2d 597, 601 (Pa. Super. 2002) (citation and quotation marks omitted).

The trial court entered an order on August 17, 2023, scheduling a hearing on the contempt petition for August 18, 2023, and the order and docket confirm that notice was provided to Batterman.[6] *See* Trial Court Order, 8/17/2023; Docket Entry 785 ("Rule 236 notice provided on 08/17/2023"). Although Batterman did not appear at the August 18 hearing, the trial court "provided [Batterman] and Mr. Neff with a full opportunity to be heard regarding issues of contempt and sanctions" at the hearing held on October 5, 2023. Trial Court Opinion, 1/5/2024, at 17; *see generally Cunningham v. Cunningham*, 182 A.3d 464, 475 (Pa. Super. 2018) (rejecting appellant's due process claim where appellant had notice of the contempt allegations and had the opportunity to respond). Therefore, based upon the evidence of record, the trial court did not violate Batterman's due process by finding him in contempt following the August 18, 2023 hearing. *See* Trial Court Opinion, 1/5/2024, at 17 (noting that "based on the totality of the circumstances including [Batterman's] past practice of intentionally avoiding appearance at

---

[6] Batterman again asserts, without any corroboration or citation to the record, that he did not receive notice of the hearing. *See generally Murphy v. Murphy*, 988 A.2d 703, 709 (Pa. Super. 2010) (holding that the mere assertion that notice was not received, absent corroboration, is not sufficient to overcome mailbox rule presumption, which presumes mailed item was received). Moreover, as stated hereinabove, our review of the record reveals, and the trial court's opinion confirms, that Batterman did not raise the due process claim related to notice before the trial court. *See* Trial Court Opinion, 1/5/2024, at 12 (finding the notice claim waived for failing to raise it before the trial court).

certain hearings[] that [Batterman] was aware of this August 18, 2023 hearing and intentionally failed to appear.").

Finally, Batterman's bald claims regarding the trial judge's bias do not afford him any relief. He has not cited to any pertinent case law or explained how his own failure to be present at a hearing demonstrated bias or that the judge should have recused. *See* Pa.R.A.P. 2119(b) (stating that argument must cite to pertinent case law in support of the argument); *see also* ***Commonwealth v. McCauley***, 199 A.3d 947, 951 (Pa. Super. 2018) (stating that "simply because a judge rules against a [party] does not establish any bias on the part of the judge against that [party]") (citation omitted).

**Suspending Custodial Rights**

We will address Batterman's third and fifth interrelated claims together. He argues that the trial court erred as a matter of law by suspending his custody and cutting off all communication with the children when it granted temporary physical custody to Santo. Batterman's Brief at 21-22, 24. Batterman asserts that the trial court entered this order to punish him because the judge's personal animus against him. *Id.* at 24. Batterman notes that Santo's petition for special relief did not request that his custody be suspended or that the court find him in contempt. *Id.* at 25-26; *see also id.* at 27 (noting Santo did not ask for temporary custody in the August 17, 2023 petition for contempt). He further contends that the trial court never cited Pa.R.Civ.P. 1915.13, which allows for a grant of temporary physical custody

as special relief, when granting Santo temporary physical custody. *Id.* at 25.

Batterman claims that Santo's petition for special relief did not contain an emergency necessitating the suspension of his custody or communications with the children. *Id.* at 23-24; *see also id.* at 24 (noting Santo did not allege that the children were in danger with Batterman). Additionally, he points to the opinion of forensic evaluator Dr. Elliot Atkins, Ed.D., P.A., that he was not a danger to the children.[7] *Id.* at 22-23, 27-28.

Pursuant to the Pennsylvania Rules of Civil Procedure, courts have the authority to issue temporary custody relief: "At any time after commencement of the action, the court may on application or its own motion grant appropriate interim or special relief. The relief may include, but is not limited to, the award of temporary legal or physical custody[.]" Pa.R.Civ.P. 1915.13; *see also J.M. v. K.W.*, 164 A.3d 1260, 1270 (Pa. Super. 2017) ("Under appropriate circumstances, a trial court may modify a custody order temporarily pursuant to Rule 1915.13.").

Here, Santo filed a petition for emergency special relief on August 14, 2024, based upon Batterman's failure to adhere to the parties' custody order and return the children to her. The trial court indicated that it granted Santo

---

[7] In a July 12, 2023 order, the trial court ordered Batterman to complete a forensic psychological evaluation with a mental health professional, who would then produce a written report to the court by November 14, 2023. Dr. Atkins conducted the evaluation and ultimately provided the report to the trial court on October 11, 2023.

temporary physical custody of the children under Rule 1915.13. Trial Court Opinion, 1/5/2024, at 34; *see also id.* at 18 (wherein the trial court notes that it made a "temporary decision" and that it "scheduled a hearing on November 9, 2023[,] to address the temporary order and granted [Batterman] supervised physical custody pending the full custody trial"). Although the trial court erroneously indicated that Santo asked for temporary physical custody in her petition for emergency special relief on August 14, 2023, *see id.* at 34, the trial court may grant temporary physical custody on its own motion. *See* Pa.R.Civ.P. 1915.13. Moreover, Batterman's claims that he was not a danger to the children does not establish error in granting temporary physical custody to Santo. *See* Trial Court Opinion, 1/5/2024, at 19 (Stating that "there is no requirement that the court comply with any recommendations of Dr. Atkins. Rather, the court included a requirement that [Batterman] comply with the recommendations of Dr. Atkins."). Indeed, Batterman wholly ignores his refusal to comply with the trial court orders to return the children to Santo pursuant to the custody order. Therefore, we find no error and conclude Batterman's claims are without merit.

**Civil and Criminal Contempt Proceedings**

In his ninth claim, Batterman contends that trial court erred as a matter of law by commingling his civil and criminal contempt proceedings at the October 5, 2023 hearing. Batterman's Brief at 29-31. Batterman argues that

the two proceedings could not be heard together for "judicial economy." ***Id.*** at 30.

Although the scheduling order for the October 5, 2023 hearing indicated the parties would present evidence to find whether Batterman was in criminal contempt for failing to appear at the August 18, 2023 hearing, the parties stipulated that "no hearing needs to be heard or no testimony needs to be taken," and that Batterman "is not to be found in criminal contempt for missing that court date." N.T., 10/5/2023, at 54; ***see also*** Trial Court Order, 10/6/2023, at 5 ("Father is not found in criminal contempt for failing to appear at the August 18, 2023 hearing."). As there was no hearing on the criminal contempt on October 5, 2023, and Batterman was never found in contempt, he is not entitled to relief on his claim.

**Purge Conditions**

Monetary Condition

In his tenth claim, Batterman argues that the trial court erred in "fining him more than the allowable limit" under the law for non-compliance with a custody order. Batterman's Brief at 31; ***see also id.*** at 32, 34, 37. Batterman contends that the amount of $19,685.57 is not supported by the record. ***Id.*** at 32, 35; ***see also id.*** at 32 (noting that the trial judge indicated that the sanction totaled forty percent of the total child support arrears). Batterman also asserts that the trial court ignored his inability to pay and his financial situation. ***Id.*** at 32, 33-34, 38; ***see also id.*** at 36 (noting judges in state and

federal court have granted Batterman in forma pauperis status, which establishes he did not have money). Batterman claims that he is unable to work as a result of health issues and injuries, as verified by doctors. *Id.* at 34, 38. Moreover, Batterman highlights that he had to pay his own life expenses, including housing, utilities, doctor's bills, transportation, food, clothing, and the children's health insurance. *Id.* at 34, 38-39; *see also id.* at 38 (stating that he is on food stamps and has a low earning capacity). Batterman contends it is not his parents' duty to pay his court fines and fees, and the trial court forced them to pay to get him out of prison. *Id.* at 34-35, 36, 38-39.

The law provides that a trial court may find a party in contempt for failure to comply with a custody order:

> (1)  A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
>> (i)  Imprisonment for a period of not more than six months.
>> (ii)  A fine of not more than $500.
>> (iii)  Probation for a period of not more than six months.
>> (iv)  An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).
>> (v)  Counsel fees and costs.
>
> (2)  An order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual.

23 Pa.C.S. § 5323(g). "It is … common in civil contempt for a court to impose a conditional prison sentence, giving the contemnor an opportunity to purge

the contempt and avoid the sentence by compensating the opposing party, paying counsel fees, or doing some other affirmative act within a certain time period." ***Rhoades v. Pryce***, 874 A.2d 148, 151 (Pa. Super. 2005) (en banc) (citation omitted). Importantly, purge factors are not sanctions and are instead, "a means of avoiding the sanction." ***Id.***; ***see also Borough of Slatington v. Ziegler***, 890 A.2d 8, 11 (Pa. Cmwlth. 2005) ("A purge condition is not a sanction. It is the opportunity to remove a sanction.").

Here, the trial court found Batterman in contempt for violating the custody order between the parties. Order, 10/6/2024, at 2-3. As the sanction, the trial court ordered Batterman to serve six months in the Montgomery County Correctional Facility. ***Id.*** at 3-4. The trial court provided purge conditions so that Batterman could be released earlier if he made a payment to Santo of "$19,685.57 through the Pennsylvania Automated Child Support Enforcement System," produce a copy of a forensic psychological evaluation, if he was ready to comply with recommendations in the forensic psychological report, and resolve any outstanding bench warrants. ***Id.*** at 4.

The trial court properly imposed the sanction of six months imprisonment for failing to conform to the requirements of the custody order under section 5323(g)(1). Contrary to Batterman's claim, the trial court did not impose a fine (payment of the child support arrears) as a sanction. Instead, the trial court provided purge conditions, including a financial factor to pay the child support arrears, that allowed Batterman to be released from

jail earlier under section 5323(g)(2). Trial Court Order, 10/6/2023, at 4; **see also Rhoades**, 874 A.2d at 151. Notably, nothing in the plain language of section 5323(g) indicates trial courts must comply with that section in specifying purge factors. **Cf. Rogowski v. Kirven**, 291 A.3d 50, 60 (Pa. Super. 2023) (noting that the trial court may impose a sanction following a contempt finding, "but any sanction must comply with Section 5323(g)."). Likewise, neither the statute nor case law set forth a limit on a financial purge factor. Therefore, Batterman's claim in this regard is without merit.[8]

Batterman additionally argues that his non-compliance is not willful, but that he is unable to meet his child support obligations and therefore cannot be found in contempt. This argument, however, addresses a finding of contempt for failing to comply with his child support obligations. Although his purge factor was based upon his child support arrears, the trial court below did not find him in contempt for violating his child support order; he was in contempt of his custody order. As such, the "willfulness" of his failure to adhere to his child support order is not before us.

---

[8] In addition to the arguments recited above, Batterman makes a single, bald claim that the trial court "has no legal authority over the support case in Philadelphia County and further it is improper to litigate support and issue sanctions at a contempt for non[-]compliance with a custody order." Batterman's Brief at 33. Batterman provides no discussion, developed argument, or citation to any authority to support this proposition. **See** Pa.R.A.P. 2119(a). Therefore, Batterman waived this claim for appellate review. **See Moranko**, 118 A.3d at 1117 n.3.

To the extent Batterman's claim can be viewed as contesting his ability to pay the purge factor, we note that in setting the conditions of a financial purge, a trial court must be "convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply." **Cunningham**, 182 A.3d at 472 (citation and brackets omitted). The contemnor may then proffer evidence that "he has the present inability to comply with the court [o]rder." **In re Est. of DiSabato**, 165 A.3d 987, 992 (Pa. Super. 2017) (citation omitted).[9]

At the hearing, Batterman testified that he was assigned an earning capacity of $26,000. N.T., 10/5/2023, at 14. Further, Batterman's mother testified that she and Batterman's father are paying for Batterman's housing, utilities, medical and dental insurance for him and the children, living expenses, and food. **Id.** at 23, 25-26. Batterman's mother also stated that they paid prior purge factors for Batterman, a court-ordered custody evaluation costing $15,000, and a forensic evaluation costing $10,000. **Id.** at 26-27, 29, 35.

The trial court found that Batterman had the present ability to pay the purge conditions. Trial Court Opinion, 1/5/2024, at 24. The trial court

_____

[9] We note that our Supreme Court recently granted allowance of appeal on the following issue: "Where a contemnor, after a finding of contempt, posits that he is unable to pay a purge, does the contemnor waive the issue if he fails to proffer affirmative proof of his financial circumstances?" **Bredbenner v. Hall**, 322 A.3d 1287, 1288 (Pa. 2024).

highlighted that Batterman "clearly has access to funds from his parents which he uses to finance his everyday life including housing and living expenses, the children's activities, vacations, legal fees, other litigation expenses and financial purge obligations." Trial Court Order, 10/6/2023, at 7 n.10; **see also** Trial Court Opinion, 1/5/2024, at 25.

Batterman does not dispute the trial court's finding that he receives continuing support and resources from his parents. **See Mencer v. Ruch**, 928 A.2d 294, 297 (Pa. Super. 2007) (noting in determining the amount of child support, courts may consider all the parent's financial resources); **see also Suzanne D. v. Stephen W.**, 65 A.3d 965, 973 (Pa. Super. 2013) (noting that gifts, which are likely to continue, can be considered in supporting an upward deviation for child support). The totality of the evidence before the trial court—including evidence of Batterman's earning capacity, and his parents' past and continuing support—established beyond a reasonable doubt that Batterman had access to funds, allowing him to pay the purge amount in this case. **See Cunningham**, 182 A.3d at 472.

The record supports the trial court's finding that Batterman possessed the present ability to pay the financial purge condition when it was imposed. We therefore conclude that the trial court properly exercised its discretion in imposing the $19,685.57 purge condition. **See Childress v. Bogosian**, 12 A.3d 448, 466 (Pa. Super. 2011) (concluding that the trial court did not abuse its discretion in finding a present ability to pay, because evidence in the record

supported the determination). Accordingly, Batterman's claim as to the financial purge is without merit.

Additional Contempt Proceeding

In his fourteenth claim, Batterman contends that the trial court erred in stating in the sanction portion of the October 6, 2023 order that a failure to complete a purge condition to gain release from prison would result in the scheduling of a contempt hearing. Batterman's Brief at 40-41. Batterman argues that the court could not find him in contempt for failing to fulfill the purge factors, noting that he would either have to serve the jail sentence or fulfill the purge factors. *Id.* at 41.

The order states the following regarding the purge factors:

2) The Court shall issue an order providing for a release date earlier than April 5, 2024 if the following conditions' are satisfied prior thereto: (i) Father must make payment to Mother in the amount of $19,685.57 through the Pennsylvania Automated Child Support Enforcement System …; (ii) Father must produce a copy of the forensic psychological evaluation ordered in this Court's July 11, 2023 Order; (iii) Father must demonstrate that he is ready, willing and able to comply with any recommendations set forth, or issued identified, in the forensic psychological report and (iv) Father must resolve any outstanding bench warrants in any other jurisdiction. **Failure to comply with any of the within conditions shall result in the scheduling of a contempt hearing**. The sanction of incarceration imposed in this Section I (the civil contempt) shall run concurrently with the sanctions imposed in Section III (relating to the probation violation).

Trial Court Order, 10/6/2023, at 4 (footnotes omitted, emphasis added).

The trial court sought to coerce Batterman's compliance with its prior orders by imposing a jail sentence and providing the above purge factors to

- 27 -

pay for the support arrears. **See Gunther**, 853 A.2d at 1020 (noting that "[a] court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs"). However, the trial court had no authority to order another contempt hearing for failing to complete the purge factors. As Batterman correctly asserts, these conditions only gave him the opportunity to purge the contempt and avoid the jail sentence; the failure to comply would not give rise to another contempt hearing. **See** 23 Pa.C.S. § 5323(g)(2). Thus, the trial court abused its discretion by including the threat of an additional contempt proceeding in the contempt order.

However, Batterman has not established that he was prejudiced by the inclusion of this language. **See** Batterman's Brief at 40-41; **see also Grove v. Port Auth. of Allegheny Cnty.**, 218 A.3d 877, 889-90 (Pa. 2019) (noting that any "perceived error" was harmless as it did not prejudice the defendant). Batterman complied with the purge factors and was released from prison. **See** Trial Court Opinion, 1/5/2024, at 22, 24. He does not contend (and the record does not support a finding) that he complied with the purge conditions to avoid being subjected to an additional contempt hearing. And of course, no additional contempt proceeding occurred. Accordingly, we strike the language—"Failure to comply with any of the within conditions shall result in the scheduling of a contempt hearing"—from the order, but need not remand the matter to the trial court for any further actions in this regard.

Forensic Evaluation and Outstanding Bench Warrants

In his seventeenth claim, Batterman contends that the trial court judge erred by imposing purge conditions that were out of his control. Batterman's Brief at 41. Specifically, he asserts that the second (completion of the written forensic psychological report), third (compliance with the recommendations contained in that unwritten report), and fourth (resolve any outstanding bench warrants) were things he was unable to address while incarcerated and/or required the actions of someone else. *Id.* at 41-43.

As noted above, the trial court, "in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply." *Godfrey*, 894 A.2d at 782 (citation and emphasis omitted); *see also Hyle*, 868 A.2d at 605.

Regarding the second and third purge factors related to the forensic report, in the October 6, 2023 order, the trial court acknowledged that the forensic report had not been completed:

> The [trial c]ourt shall schedule a hearing as soon as practicable after receiving a copy of the forensic psychological report to address whether (a) the report includes any recommendations or identifies relevant issues of concern relating to custody, (b) [Batterman] is ready, willing and able to address any such recommendations and/or relevant issues of concern and (c) the resumption of [Batterman's] court-ordered custodial time is appropriate.

Trial Court Order, 10/6/2023, at 4 n.6. Dr. Atkins did not file his final report until October 11, 2023, five days after the entry of the contempt order. *See* Trial Court Order, 10/16/2023, at 1 n.2 ("[Dr. Atkins] has generated a court-ordered 'Final report of my assessment of Chad Batterman' dated October 11, 2023."). Plainly, Batterman did not have the "present ability to comply" with the second or third condition; as such, the trial court abused its discretion in this regard, and we vacate these portions of the order. *See Hyle*, 868 A.2d at 605 (affirming the contempt portion of the order, but vacating the purge condition, noting that appellant's "ability to comply with the purge set by the trial court will only occur sometime in the future").

Similarly, Batterman did not have the present ability to comply with the fourth purge factor, as he could not resolve any bench warrants in other jurisdictions while he was in prison. Accordingly, this purge condition also constitutes an abuse of discretion, and we vacate that portion of the order. *See Godfrey*, 894 A.2d at 784 (finding appellant did not have a present ability to comply with the purge factor requiring him to secure employment while in prison).

Although we vacate the above portions of the order, we again need not remand the case for further proceedings because Batterman served the contempt sentence. Indeed, remanding for further proceedings to enable the trial court to direct conditions with which Batterman could immediately comply is unnecessary, as the purpose of the contempt was to address Batterman's

failure to comply with his custody order.  Accordingly, we strike the portions of the order that detailed purge factors (2, 3, and 4) that Batterman could not immediately fulfill.

### Delayed Release from Incarceration

In his nineteenth claim, Batterman argues that the trial court erred by failing to immediately release him from prison after he satisfied all the purge conditions.  *Id.* at 44-46.  According to Batterman, he was not released from jail until October 16, 2023, despite meeting all the purge factors on October 11, 2023.  *Id.* at 44; *see also id.* at 44, 45 (noting his parents paid the purge factor of $19,685.57 on October 6, 2023, he met the requirements of the forensic report on October 11, 2023, and he confirmed at the hearing on October 13, 2023, that he would comply with the report's recommendations, and Santo's counsel conceded he met the purge factors).  Batterman asserts that the trial court judge delayed his release under the false pretense of checking with Dr. Atkins on whether his recommendations would change because of Batterman's pending criminal charges.[10]  *Id.* at 45-46.[11]

_____

[10] On August 19, 2023, Batterman was charged with interference with custody of children and concealment of whereabouts of the children.

[11] We note that Batterman's challenge to his sentence for civil contempt of a custody order is not moot because he had been released from jail.  *See Warmkessel v. Hefner*, 17 A.3d 408, 413 (Pa. Super. 2011) (holding that appellant met an exception to the mootness doctrine when, even though he had completed his sentence, he remained subject to the same order, he might face civil contempt proceedings again, and he and other similarly situated defendants could raise the same claim in the future).

The trial court noted that Batterman produced the report on October 11, 2023, and the trial court scheduled a hearing for October 13, 2023, to determine whether the purge conditions had been satisfied. Trial Court Opinion, 1/5/2024, at 27. The trial court stated that following the hearing, it required confirmation from Dr. Atkins that he had reviewed relevant documents and filings before the court and was aware of pending criminal charges against Batterman. *Id.* at 27-28. After confirming that Dr. Atkins had reviewed the documents and that his recommendations were unchanged, the trial court released Batterman on October 16, 2023. *Id.* at 28.

As we have already found, the trial court abused its discretion in imposing the purge factors with which Batterman did not have an immediate ability to comply. It therefore follows that his continued incarceration for failing to meet those improperly imposed conditions was error. Nonetheless, we cannot grant any relief as Batterman has completed his contempt sentence. Pointedly, Batterman does not ask for any specific relief for this error.

### Failure to Provide Documents to Forensic Psychologist

In his twenty-second claim, Batterman argues that the trial court erred in failing to provide Dr. Atkins certain documents. Batterman's Brief at 47. Batterman argues that he asked the trial court to provide the full July 11, 2023 transcript to Dr. Atkins, but the trial court only provided the relevant portion of the transcript. *Id.*

Batterman includes no substantive argument in his brief before this Court, and instead directs us to arguments and exhibits raised in the two of the petitions he filed in the trial court. *Id.* As stated above, it is unacceptable for an appellant seeking relief in this Court to incorporate by reference arguments in other materials. *See Franciscus*, 135 A.3d at 1097. Further, Batterman fails to explicitly set forth the relief he seeks as to this issue. In light of the paucity of Batterman's argument, we find this claim waived.[12]

### Trial Court as Advocate

In his thirty-third claim, Batterman argues that the trial court judge did not act as a neutral arbiter of the disputes before it, and instead acted as counsel for Santo. Batterman's Brief at 49. Batterman contends that the trial

_____

[12] The trial court addressed this claim and found Dr. Atkins never requested the relevant transcript in its entirety:

The July 11, 2023 order set forth a list of documents the court was asking Dr. Atkins to review. One item was a transcript from the July 19, 2023 hearing, encouraging Dr. Atkins to "focus on the latter portion of the hearing, starting with the [trial c]ourt's words 'I will now take a few minutes to place a relevant summary of this matter on the record.'" This was designed to provide Dr. Atkins with a relevant history of the case (including instances of Father being found in contempt of custody orders dating back to when Philadelphia County had jurisdiction prior to April 2019). The court requested this portion of the transcript from the court reporter and provided it to Dr. Atkins upon receipt. The court has no record that Dr. Atkins ever asked for the entire transcript; had he done so[,] the court would have provided it (or at the very least reached out to Dr. Atkins to address the request).

Trial Court Opinion, 1/5/2024, at 29-30.

court excessively questioned him in several different hearings.  *Id.* at 50.

Batterman claims that the judge refused to allow him to speak to his attorney,

and ordered the sheriff to mute his microphone in court.  *Id.* at 50-51.  He

maintains the trial court judge was prejudiced against him because the judge

did not find Santo in contempt despite her actions that were similar to his own

actions which resulted in a contempt finding.  *Id.* at 49-50.  Batterman seeks

the immediate recusal of the judge.  *Id.* at 51-52.

Batterman does not cite to any place in the record where the trial court

acted as counsel or that he objected to the trial judge's questions.  Instead,

Batterman broadly states that the judge excessively questioned him at several

hearings, failing to identify the hearings where this occurred or the questions

that were allegedly asked.  *Id.* at 50; *see also* Pa.R.A.P. 2119(c) ("If

reference is made to the pleadings, evidence, charge, opinion or order, or any

other matter appearing in the record, the argument must set forth, in

immediate connection therewith, or in a footnote thereto, a reference to the

place in the record where the matter referred to appear.").  Therefore, this

claim is waived on appeal.  *See* Pa.R.A.P. 302(a) ("Issues not raised in the

trial court are waived and cannot be raised for the first time on appeal.").[13]

---

[13]  In any event, we note that pursuant to Pennsylvania Rule of Evidence 614(b), "the court may examine a witness regardless of who calls the witness."  Pa.R.E. 614(b).  Again, Batterman does not point to any specific questions where the trial court acted improperly.

Moreover, with regard to his recusal claim, Batterman includes no substantive argument in his brief before this Court, and instead incorporates the arguments he raised in a recusal motion filed on July 10, 2023. As stated above, it is unacceptable for an appellant seeking relief in this Court to incorporate by reference arguments in other materials. *See Franciscus*, 135 A.3d at 1097. Therefore, we find this claim is waived as well.

**Bench Warrant**

In his thirty-seventh claim, Batterman argues that the trial court erred in failing to lift his August 18, 2023 bench warrant on September 29, 2023. *Id.* at 52. Batterman asserts that the trial court assured him in September 2023 that once he turned himself in, it would lift the bench warrant. *Id.* at 53. Batterman claims this was "bribery and quid pro quo" by the judge. *Id.*

The trial court addressed this claim as follows:

[The trial] court issued a bench warrant for [Batterman's] failure to appear at the August 18, 2023 hearing. The court revoked the bench warrant when [Batterman] next appeared in court, on October 5, 2023. As [Batterman] well knows (he has had previous bench warrants in multiple counties for failing to appear in court), [Batterman] could have reported to the courthouse at any time to address the warrant. This issue does not avail [Batterman] to appellate relief.

Trial Court Opinion, 1/5/2024, at 39.

Batterman baldly argues, without citation to the record, that his warrant should have been revoked in September 2023. He does not establish that he appeared in court at any time before October 5, let alone on a specific date in

September 2023. *See* Pa.R.A.P. 2119(a). Accordingly, he is not due relief on this claim.

## Barring Filings

In his thirty-eighth claim, Batterman contends that the trial court erred in failing to lift an order barring him from submitting filings with the Montgomery County Prothonotary. Batterman's Brief at 53. Batterman argues the order violated his constitutional rights, noting he is allowed to make appropriate legal filings. *Id.* at 53-54. Batterman notes that after he turned himself in on October 5, 2023, the court should have removed the restriction. *Id.* at 54.

> The trial court addressed this claim as follows:
>
> When [Batterman] did not appear for court on August 18, 2023, the court issued a bench warrant for his arrest. The August 18, 2023 order provided, in relevant part, that "the Prothonotary is directed to reject any proposed filing of [Batterman] until [Batterman's] bench warrant is resolved." As noted in a footnote, the provision was designed to prevent a scenario where [Batterman] is ignoring court orders to appear while simultaneously filing petitions with the same court seeking redress. The bench warrant was revoked after [Batterman] appeared for court on October 5, 2023. The court has confirmed with the Office of the Prothonotary that there is nothing preventing [Batterman] from filing petitions (which [Batterman] surely knows; he has filed approximately 12 petitions with the Office of the Prothonotary between the filing of this notice of appeal and the date of this opinion).

Trial Court Opinion, 1/5/2024, at 40.

Batterman has not established that the trial court erred or that any limitation on his ability to file exists. To the contrary, he makes no argument

in opposition to the trial court's statement that he continues to file petitions in the trial court. Therefore, Batterman is not entitled to relief.

**Frivolous Petitions**

In his thirty-ninth claim, Batterman contends that the trial court erred in finding two of his contempt petitions—docket number 743 ("Petition for Contempt of Court for failing to Comply with the July 16, 2021 order & August 19, 2021 order") and docket number 746 ("Petition for Contempt of Court for Willful Perjury at Court Hearings Under Oath") against Santo to be frivolous. Batterman's Brief at 54-57. Batterman argues that he should have been permitted to withdraw these petitions prior to the court ruling on them. *Id.* at 54, 56; *see also id.* at 56 (noting that he had been able to withdraw other petitions without prejudice). Batterman asserts that he has the right to raise these claims in his petitions and such a right does not constitute frivolity. *Id.* at 55. According to Batterman, the trial court should not have dismissed the petitions with prejudice as frivolous as he filed them in good faith and has support for the claimed contempt. *Id.* at 55-56. Batterman contends that the judge ruled on the petitions prior to the October 5, 2023 hearing, evidencing that he would never rule in favor of Batterman. *Id.* at 55.

At the October 5, 2023 hearing, during which Batterman's various petitions were addressed, the trial court provided Batterman the opportunity to withdraw any of his petitions. N.T., 10/5/2023, at 4-8. Specific to the two petitions identified by Batterman, his counsel sought to withdraw the petitions

without prejudice. *Id.* at 8. The trial court indicated it would consider that request. *Id.* Later, at the conclusion of the hearing, the trial court found the filings at docket numbers 743 and 746 to be "clearly, legally frivolous," dismissing them with prejudice. *Id.* at 57.

In support of his claim of error, Batterman has not cited any case law, statutes, or rules that require the trial court to allow the withdrawal of a petition without prejudice. *See* Pa.R.A.P. 2119(a). Therefore, Batterman waived this claim for appellate review. *See Moranko*, 118 A.3d at 1117 n.3.

In any event, we note that it has long been the law that jurisdiction of the court attaches when a contempt petition is filed or presented. *In re Mount Lebanon Tp.*, 79 A.2d 670, 674 (Pa. Super. 1951) (citing *In re Mercersburg Independent School Dist.*, 85 A. 467, 469 (Pa. 1912)). Once jurisdiction attaches, a petitioner does not have unfettered authority to withdraw the petition and must first obtain leave of court. *In re Mercersburg*, 85 A. at 468; *accord In re Mount Lebanon Tp.*, 79 A.2d at 674. We review a trial court's decision regarding withdrawal of a petition for an abuse of discretion. *In re Mount Lebanon Tp.*, 79 A.2d at 675.

Here, the trial court had jurisdiction to consider the contempt petitions as they were filed in court, and Batterman was not entitled to withdraw the contempt petitions without leave of court. *See In re Mercersburg*, 85 A. at 468-69; *In re Mount Lebanon Tp.*, 79 A.2d at 674. The trial court took the matter under advisement and after the hearing, denied the contempt

petitions. The trial court found that Batterman "had been warned in open court and in court orders from multiple judges not to abuse the process by filing frivolous and/or mislabeled petitions.[14] [Batterman] has ignored all warnings." Trial Court Opinion, 1/5/2024, at 41 (footnote added). Batterman does not demonstrate that the trial court abused its discretion in denying his request to withdraw the contempt petitions. *See In re Mount Lebanon Tp.*, 79 A.2d at 675. Likewise, he fails to establish the trial court misapplied the law or abused its "discretion in a manner lacking reason" when it denied the contempt petitions. *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa. Super. 2012). As noted above, the burden of proof rests with Batterman to prove that Santo was in non-compliance with a court order. *See Harcar*, 982 A.2d at 1234. He failed to do so. Therefore, in light of this, and Batterman's failure to support his argument with any precedent, we conclude the claim is without merit.

### Criminal Charges

In his forty-sixth claim, Batterman argues that the trial court erred in stating that Santo's recitation of his alleged actions led to the filing of criminal charges against him. Batterman's Brief at 58. Batterman contends that it was the judge's actions that brought about the charges, noting that the judge

---

[14] The trial court also noted that Batterman "repeatedly filed petitions that are mislabeled, perhaps in an effort to avoid paying filing fees." Trial Court Opinion, 1/5/2024, at 41.

issued three orders in August 2023 that were never served on Batterman. ***Id.*** According to Batterman, the entry of the orders allowed Santo to go to the police and allege he was willfully violating the orders. ***Id.***

In addressing Batterman's contention here, the trial court observed that the criminal complaint at issue "is a matter of public record," and "both charges were held for court following a preliminary hearing." Trial Court Opinion, 1/5/2024, at 43, 44. There were in fact criminal charges pending against Batterman based upon his violation of the trial court's orders. In fact, Batterman acknowledges the existence of the charges, but takes issue with why they were filed against him. This is not something subject to correction in this appeal. As he merely argues that the trial court erred in mentioning his charges, which are a matter of public record, we conclude that this claim does not warrant relief.

**Conditions Not Requested by Santo**

In his final claim, Batterman asserts that the trial court judge erred in imposing sanctions beyond those requested by Santo in her August 2023 contempt petition. Batterman's Brief at 58-59. Batterman claims the judge went "outside of the four corners" of her petition as well as the other pending petitions. ***Id.*** at 58. Batterman maintains that the sanctions do not support the best interests of the children and establishes the judge's bias and partiality against him. ***Id.*** at 59.

As stated above, the trial court may adjudge a party in contempt for non-compliance with a custody order, and may punish them with any one or more the sanctions listed in section 5323(g)(1). There is no requirement that the trial court's sanctions be in accordance with the petitioning party's request. In fact, Batterman cites to no case law requiring the trial court to analyze the "four corners" of a contempt petition when imposing sanctions. *See* Pa.R.A.P. 2119(a). Batterman is not entitled to relief.

**Emergency Petitions for Relief**

While this matter was pending before this Court, Batterman filed two applications for emergency relief seeking to supplement the record with new evidence and facts. However, "[t]he fundamental tool for appellate review is the official record of the events that occurred in the trial court." ***Commonwealth v. Preston***, 904 A.2d 1, 6 (Pa. Super. 2006). Significantly, "matters which are not of record cannot be considered on appeal." ***Id.***; ***see also In re D.D.***, 597 A.2d 648, 653 (Pa. Super. 1991) ("For purposes of appellate review, what is not of record in the trial court does not exist."). Because Batterman seeks to introduce new evidence, which was not made a part of the certified record below, we cannot consider it on appeal. Therefore, we deny both applications.

**Conclusion**

Order affirmed in part and vacated in part. November 15, 2024 Application for Emergency relief denied. December 4, 2024 Application for Emergency Relief denied. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/13/2025